Cecil Ray JEFFERS *v.* STATE of Arkansas

CR 79-213                                    658 S.W.2d 869

Supreme Court of Arkansas
Opinion delivered October 24, 1983

*Henry C. Kinslow,* for appellant.

*Steve Clark,* Atty. Gen., by: *Matthew Wood Fleming,* Asst. Atty. Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant was found guilty of the crimes of rape, breaking and entering and theft of property. He appealed and the convictions were affirmed. *Jeffers* v. *State,* 268 Ark. 329, 595 S.W.2d 687 (1980). We then granted his petition to seek post-conviction relief·based on the allegation of ineffective assistance of counsel. The circuit court held a Rule 37 hearing and denied relief. We affirm. Jurisdiction is in this court pursuant to Rule 29 (1) (b) and (e).

Appellant argues nine points of appeal. One of them is not related to the allegation of ineffective assistance of counsel, the only ground upon which we granted permission to proceed, and we do not consider that point. *Fink* v. *State,* 280 Ark. 281, 658 S.W.2d 359 (1983).

Counsel is presumed effective and, for a petitioner to prove otherwise, he must: (1) overcome the presumption; (2) demonstrate that he was prejudiced by the conduct of his counsel; and (3) prove by clear and convincing evidence that the prejudice was such that he did not receive a fair trial. *Blackmon* v. *State,* 274 Ark. 202, 623 S.W.2d 184 (1981).

Appellant first argues that his counsel failed to properly conduct voir dire of the jurors or alternatively failed to move

for a new trial on the grounds of juror bias. He does not abstract the record from the original trial and, at his post-conviction hearing, presented no evidence of the alleged failure to conduct voir dire. Our own examination of the original record reveals the following occurred:

THE COURT: Are any of you biased or prejudiced for or against Mr. Jeffers? Do any of you know of any reason why you could not serve in this case on the jury and try these cases as a juror and render a fair and impartial verdict based entirely upon the law and the evidence? If you know of any reason why you cannot, please hold up your hand. I see no hands.

All right. Now, how do you gentlemen — how would you like to arrive at a jury panel?

MR. GIBSON: It makes no difference to the State.

THE COURT: Mr. Cashion, do you have any —

MR. CASHION: I'd rather call them individually.

THE COURT: You'd rather call them individually?

MR. CASHION: Yes, sir.

THE COURT: All right. Do you want the jury to go to the other courtroom and examine them one at a time?

MR. CASHION: I would prefer that.

THE COURT: All right. Mr. Sheriff, take all the jury except Mrs. Pamela Ann Smith. She's the first one.

Members of the jury, go with the Sheriff and go into the other courtroom there and you will be called back.

The individual questioning of each juror was not reported but there is no record indicating that it did not occur. We find no merit in the contention that counsel failed to properly conduct voir dire.

Appellant alternatively contends that counsel improperly failed to move for a new trial on the ground of juror bias. He asks that we assume five members of the panel were biased because they also sat as jurors in a trial for the murder of the prosecutrix's sister. The appellant, in his brief, admits "Although asked by the court, the jurors denied knowing Mrs. Stephenson or being biased in any fashion."

Appellant's argument fails because he has not demonstrated bias on the part of any juror. Jurors are assumed to be unbiased and the burden of demonstrating actual bias of any juror is on the petitioner. *Urquhart* v. *State,* 275 Ark. 486, 631 S.W.2d 304 (1982). Appellant next contends that actual bias need not be proven under the federal standard. He cites the following paragraph from *U.S.* v. *Dean,* 667 F.2d 729 (8th Cir. 1982):

> We conclude that, generally speaking, post-verdict orders for new trials on account of suspected but unproven juror bias are, and should be, granted only where the probability for juror bias is so great that in fairness it cannot be ignored. Thus, we are inclined not to make a distinction between possible prejudice and actual prejudice when addressing the issue of waiver. *See Brumbagh, supra,* 471 F.2d at 1130-31 (McCree, J., concurring.)

We will not now attempt to distinguish between possible prejudice and actual prejudice because there is no great possibility of jury bias in this case.

Appellant next argues that his attorney should have moved for a change of venue. He cites no pretrial publicity necessitating a change of venue but, with no record whatsoever, argues, "It is well known that the populace justly sympathized with" the prosecutrix. Appellant's attorney at the original trial testified at the post-conviction hearing that he considered the motion but decided against it. It was a matter of trial strategy and within the realm of counsel's professional judgment and is precluded as a matter of relief. *Clark* v. *State,* 274 Ark. 81, 621 S.W.2d 857 (1981). Further,

the trial court's finding that the jury was impartial and no prejudice was presented is not clearly erroneous.

The appellant insists that counsel improperly failed to raise the affirmative defense of self-induced intoxication. Appellant admitted that, while normally he was a "business man," he did break into the prosecutrix's home and take the property as charged.

A. 'Cause I've never really broke into any houses before. Mainly I was a business.
Q. Business burglar?
A. Yes, sir. I'm a safe burglar.
Q. You're a safe burglar?
A. Yes, sir. And just business.

However, he consistently stated that he had completed the burglary and was just outside of prosecutrix's home when someone else committed the crime of rape. Under this set of facts, it is hard for us to imagine a worse strategy than the one appellant now proposes — that appellant, whose business was admitted to be burglary, wasn't in the residence when the rape took place and he did not commit the rape, but, if he was in the house when the rape took place and if he was the one who committed the rape, he was too drunk to have formed the specific intent to commit the crime. The failure to defend the charge of rape on the basis of inconsistent defenses normally is not evidence of ineffective counsel. *Blaney* v. *State*, 280 Ark. 253, 657 S.W.2d 531 (1983). Similarly, we cannot say that the decision not to use the same defense to the charge of breaking and entering or theft was ineffective assistance, even if it is a valid defense to those crimes. *See* Liebman, *Voluntary Intoxication as a Defense to Crime*, 1983 Ark. Law Notes 29.

Appellant next argues that counsel failed to object to a highly improper closing argument by the prosecuting attorney. Appellant offers no factual evidence in his abstract to support the claim. We are offered only conclusory allegations and they will not warrant post-conviction relief. *Bosnick* v. *State*, 275 Ark. 52, 627 S.W.2d 23 (1982). However, of our own volition, we have examined the original record

on redirect examination by the prosecuting attorney; the victim answered as follows:

Q. No, you have testified in this case and you remember what happened that night; you have seen the defendant here today; you have heard him testify. Is he the one that raped you?
A. I think he is.
Q. Are you sure of that?
MR. CASHION:
    She answered your question, Mr. Gibson.
A. There is no doubt in my mind that it is Cecil Ray.
Q. I want to make sure that you know what you are saying.
A. Yes, sir.
Q. There is no doubt in your mind?
A. No, sir.

Later, after the state had rested a juror asked: "I would like to ask Mrs. Stephenson if it was the same voice."

The court and counsel conferred and the jury was advised that the case had been developed by both the state and defendant and they would have to base their verdict upon the evidence which had been submitted. In the prosecutor's closing argument, he stated:

Ladies and gentlemen of the jury, I am pleased to see that we have each completed the testimony necessary to decide this case today. I will try to go back over the facts as I recall them and give you the State's version of this case.

I wish that I was in a position to know all the questions that you might have in your minds. There's never been a case, I guess, that we ever did put on everything that would answer every single question. But we did here, one of two questions — that one of the jurors had. And that's the reason I put Brenda Stephenson back on the stand at the close of the defendant's testimony.

Rather than ask her a point blank question and try to lead her and tell her what to say, I asked her the

question, "Now, Brenda, you have heard the testimony of the defendant, you have seen him here today; you've seen his size." She's heard his voice here today.

Then I asked her, "Are you convinced or did Cecil Jeffers rape you? Is he the one?" She has been in here listening to his testimony, seen his demeanor on the stand, seen how he acts, just like you have, and she heard his voice before. I feel like that if there was any doubt in her mind that that was his voice she heard that night, she would have told you.

She told you that it was Cecil Jeffers. This is the only and first time she's had a real good opportunity to listen to him talk under normal conditions.

The prosecutor never did state, as appellant urges, that the victim had identified the appellant as her attacker by recognizing and identifying his voice. He merely went over much of the testimony of the victim and said that "she heard his voice before" and that she heard "his voice here today."

The closing argument of the prosecution did not go beyond the reasonable inferences and deductions to be drawn from the testimony.

Further, the original record reveals that the jury was instructed that "opening statements, remarks during trial, and closing arguments of the attorneys are not evidence but are made only to help you in understanding the evidence and applicable law. Any argument, statements, or remarks of attorneys having no basis in the evidence should be disregarded by you." In *Fink* v. *State,* 280 Ark. 281, 658 S.W.2d 359 (1983), citing *Harrison* v. *State,* 276 Ark. 469, 637 S.W.2d 549 (1982), we found this instruction to be significant in removing any claimed prejudice because of the state's closing argument.

Appellant next urges that his attorney failed to object to and attack the credibility of evidence introduced by the state. He cites no authority for the proposition. Appellant states that his attorney failed to attack the credibility of the state's

expert since he could not positively match the appellant's hair with hair samples taken from the victim's clothing. However, appellant fails to point out that his attorney, on cross-examination, did question the expert about the fact that hair is not like fingerprints, and about what the expert can tell from hair samples. Sufficient evidence was presented to the jury to allow them to draw their own conclusions about the hair samples. Appellant further states that hearsay testimony was allowed, without objection, to put the appellant's military cap at or near the scene of the crime. He fails to indicate the testimony to which he refers. Appellant also argues that defense counsel failed to point out that the hair purporting to be the appellant's was found on a pillowcase taken from the victim's bed but that a state's witness had testified that the bed in question was made up without the bedspread being pulled back. Again, there was sufficient evidence for the jury to consider the inconsistencies.

Likewise, defense counsel's inability to find a supposed missing witness and call him as a witness, or else move for a continuance, will not warrant a finding of ineffective assistance of counsel under the facts of this case.

The name of the missing witness is Chuck Tremor. The appellant's attorney stated that the appellant gave him the name of Tremor but that he was unable to locate him. The attorney inquired of the local police but they also were unable to locate him. A summons was issued for him by the state. Appellant's testimony, at the post-conviction hearing, about Tremor's location was as evasive as Tremor:

Q. Did you tell your lawyer where he was when the trial started?
A. Did I tell the lawyer where he was? I told him he participated. I couldn't keep up with where he was at.
Q. Okay. Did you tell him . . . did you ever tell your lawyer where Charles Tremor was located the first time you talked with him?
A. The first time I talked with him?
Q. Yeah.
A. In what way do you mean?

Q. Well, the first time you talked with Mr. Cashion? Did you tell him about Charles Tremor?
A. I can't recollect.
Q. Well, I assume you cannot recollect where Mr. Tremor was after you got arrested?
A. Yes, sir.
Q. Where was he?
A. I got a telephone call informing me where he was at at the Ashley County Sheriff's Department and he was in Cameron, Louisiana.
Q. Cameron, Louisiana? Well, the question was . . . one of the questions was did you tell your lawyer about Chuck Tremor when you first talked with him?
A. When I talked to my lawyer on an occasion I know for a fact that I informed him of Mr. Tremor and where he might be located at, but I do not remember if it was exactly the first time that I spoke with him.
Q. But you don't have any direct knowledge that Mr. Tremor's body was located where you told your lawyer it might be, do you?
A. Ah, I can't say I did.

Appellant next argues that his attorney did not act with diligence since he did not contact Mrs. Tremor in order to locate her husband. The appellant fails to mention that Mr. Tremor had ceased to live with Mrs. Tremor and, as a matter of fact, she was living with the appellant at the time of his arrest.

Finally, the attorney indicated that he thought his chances were better going to trial without Tremor. In that way, appellant could maintain that Tremor raped the victim, then ran away, and could not be found as a witness by trial time. On the other hand, if the trial were continued and Tremor was located, Tremor would either corroborate the testimony of the victim or else confess, the latter being, at best, a very remote possibility. This was a matter of trial strategy and within the realm of counsel's professional judgment, precluding this as a ground of relief. *Clark* v. *State*, 274 Ark. 81, 621 S.W.2d 857 (1981).

Appellant's sixth argument is that his attorney failed to properly investigate the case and put on exculpatory evi-

dence although it was readily available. No citations are given. Appellant contends that there was evidence and a witness to verify the fact that there were two sets of clothes, two different sizes found near the scene supporting appellant's contention that he was not alone on the night the crimes occurred. He further contends that there was a witness known to defense counsel that testified pieces of rope found at the scene did not match rope allegedly sold to appellant some days prior to the incident. Appellant states that no effort was ever made to subpoena the alleged perpetrator, Chuck Tremor, or otherwise investigate the possibility that the appellant did not commit the rape.

Although appellant does not indicate who the witness was that could have testified about the rape, it is true that, at the original trial, State Trooper Penson was not called as a witness to testify that he found a jumpsuit, a pair of regular waist high pants and a black tee shirt and that the jumpsuit and pants were different sizes.

We see no prejudice in the defense attorney's decision not to call the trooper because Deputy Sheriff Lyle Bates was called as a witness and not only testified about the clothes but brought them into the courtroom and they were ordered into evidence. Appellant was cross-examined on them as follows:

Q. All right. You were in a hurry, and you dropped things as you ran out and you took the clothes off that you had on that you were covered up with?
A. All I had on —
Q. It was your business to dress in black clothes?
A. Yes.
Q. And you had this black tee shirt?
A. No, sir.
Q. You didn't have this black tee shirt?
A. No, sir.
Q. What was it doing out there?
A. Chuck wore it.
Q. Oh, he wore it?
A. (No answer)
Q. What size do you wear?

A. I don't — I couldn't really tell you.

Q. You don't know what you wear?

A. I wear about a twenty-nine in the waist.

Q. No. Shirt?

A. I'm trying to think of that.

Q. You are about a medium size, aren't you?

A. You want to check this one?

Q. Do you know?

A. Not really.

Q. You don't even know?

A. No, sir.

Q. You don't check it out before you take it, you just steal it?

A. I don't steal clothes.

Q. You don't steal clothes?

A. No, sir.

Q. Well, what size does Chuck wear? What size boy is he?

A. He's about the same size I am. Maybe a little bit bigger.

Q. He just happens to be the same size you are?

A. Yes, sir.

Q. Has he got the same kind of hair you've got?

A. Yes, sir. Maybe around — It's about the same texture.

Q. Well, are there any of these things yours? Have you seen them?

A. Yes, I've seen them all before.

Q. Any of them yours?

A. That jump suit right there.

Q. The jump suit is yours?

A. Yes, sir.

Q. And you left it laying out there between — close to the back packs?

A. Yes, sir.

Q. That's where you undressed and took it off?

A. I took it off. I had my jeans on under that. I took off that there and threw it by these packs.

The seventh point raised on appeal is that the court erred in denying appellant post-conviction relief because the statement made by defense counsel at trial strongly indicates

that the trial counsel's best efforts were not put forth in defense of the appellant. Appellant states that at the conclusion of the proceedings at trial, defense counsel, in the presence of appellant and other witnesses, approached the victim and said to her, "See . . . ? I did what I promised." The attorney at the post-conviction relief hearing testified as follows:

> Q. Ah, Mrs. Wilkerson testified that at the end of the trial you turned around or she heard you say "I told you I'd do or I did what I said I would do," or something to that effect?
>
> A. That's correct.
>
> Q. And then when she looked around she decided that you were talking to Brenda Stephenson?
>
> A. Possibly. I don't know what she did.
>
> Q. Ah, did you have any agreements with Mrs. Stephenson when you interviewed her?
>
> A. I asked for permission, ah, to interview Mrs. Stephenson personally. Ah, the sheriff's officials and everybody said that she was upset and everything like that, but that they would call her and ask her if I could come over there. Ah, I did go to the butane place or whatever it is, I think it is butane, where she works.
>
> Q. Her place of business?
>
> A. Her place of business, and, ah, one of her employers was there and I asked if I could talk and he said yes and, as a matter of fact all the conver . . . I think he left . . . all the conversation was between Mrs. Stephenson and myself. I told her that I represented Mr. Jeffers on the charges and that I wanted to know everything that happened, if she would tell me what it would be. I told her beforehand that, ah, she didn't have to worry that I was going to blacken her name or bring things in that I didn't think were necessary for the trial. That I was there to get the statement and consequently, she didn't hold back on anything she told me.

There is no evidence which would support the allegation that the attorney did not put forth his best efforts on defendant's behalf or that there was any collusion between defense counsel and the victim.

Appellant's last argument is that his attorney failed to advise him of his right not to incriminate himself and also failed to move to suppress an incriminating statement which was improperly taken. There is no testimony in the record indicating that appellant's counsel failed to inform him of his Fifth Amendment rights. The lack of a factual basis renders the allegation a conclusion. It is settled that counsel is presumed effective and appellant bears the burden of overcoming this presumption. *Rightmire* v. *State,* 275 Ark. 24, 627 S.W.2d 10 (1982). A conclusion, unsupported by the facts presented, that trial counsel failed to inform appellant of his right against self-incrimination will not suffice to overcome this presumption and warrant post-conviction relief. *Smith* v. *State,* 264 Ark. 329, 571 S.W.2d 591 (1978).

Appellant next contends trial counsel was ineffective in failing to move to suppress an incriminating statement taken from appellant. Appellant's statement was not introduced at the trial but he argues that he anticipated the introduction of the statement and testified to lessen its impact. Once again, however, appellant's argument is not supported by facts from the post-conviction hearing. Appellant did not testify that he took the stand at the trial in anticipation of the statement's introduction. Appellant's trial counsel testified appellant participated in the trial decisions and was kept informed of counsel's opinion of the evidence and the choices appellant faced.

Affirmed.