Allison Thomas PETTIT *v.* STATE of Arkansas

CR 88-40                                        758 S.W.2d 1

Supreme Court of Arkansas
Opinion delivered October 10, 1988

424

*Appellant,* pro se.

*Steve Clark*, Att'y Gen., by: *Paul L. Cherry*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. In 1984 the appellant, Allison Thomas Pettit, committed twelve robberies. He pleaded guilty to five counts of robbery in federal court and was sentenced to eleven years on each count, the sentences to run concurrently. He pleaded guilty in the Circuit Court of Pulaski County, Fourth Division, to seven counts of aggravated robbery and six counts of theft of property. Judge John Langston sentenced him to fifteen years imprisonment on each aggravated robbery count and five years imprisonment on each theft of property count (a total of 135 years), the sentences to run consecutively with each other and concurrently with the federal sentences. Thereafter, he filed a petition in circuit court for post-conviction relief pursuant to Ark. R. Crim. P. 37. After an evidentiary hearing before Judge Jack Lessenberry, his petition was denied. From this order, he appeals.

For reversal he argues that the court erred in (1) finding that his counsel was competent; (2) finding that his guilty pleas were voluntary; and (3) sentencing him to 135 years imprisonment. We find no error and affirm the trial court.

## I. *COMPETENCY OF COUNSEL.*

Pettit contends that his counsel, John Achor, was incompetent in that Achor (1) led him to plead guilty by misrepresenting that certain agreements had been made with the State and Judge Langston; (2) failed to provide the sentencing court with mitigat-

ing evidence; (3) failed to investigate a known medical defense; and (4) failed to move to quash Pettit's confession. We disagree.

A petitioner has the burden of overcoming the strong presumption that his counsel was competent. *Hudson v. State*, 294 Ark. 148, 741 S.W.2d 253 (1987). To prove ineffective assistance of counsel, a petitioner must show (1) that his attorney made so serious an error that he was not functioning as the "counsel" guaranteed by the sixth amendment and (2) that his counsel's deficient performance was so prejudicial as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984). *Pennington v. State*, 294 Ark. 185, 741 S.W.2d 266 (1987). In order to satisfy the prejudice requirement, a defendant who pleads guilty must demonstrate that but for counsel's errors he would not have done so. *Hill v. Lockhart*, 474 U.S. 52 (1985); *Hudson, supra; Jones v. State*, 288 Ark. 375, 705 S.W.2d 874 (1986). As we stated in *Crockett v. State*, 282 Ark. 582, 669 S.W.2d 896 (1984), "[a] defendant whose conviction is based upon a plea of guilty normally will have difficulty proving any prejudice since his plea rests upon his admission in open court that he did the act with which he is charged."

Pettit alleges that his counsel, John Achor, misled him to believe that arrangements were made with the State and Judge Langston pursuant to which Pettit would receive a maximum sentence of twenty years imprisonment on all charges. As noted above, the trial judge sentenced him to 135 years imprisonment. He asserts that he would not have pleaded guilty but for counsel's misrepresentation.

In examining the record we find that Judge Langston conducted a plea hearing on January 15, 1985, and a sentencing hearing on April 8, 1985. During the course of the plea hearing, Achor advised the trial court that the State had agreed to permit him to defer Pettit's sentencing until after Pettit had been sentenced in federal court on similar charges. Such practice is not unusual. It is somewhat common for attorneys who represent clients who are subject to both federal and state charges to expedite pleas of guilty to the federal charges so that their client will be sentenced to federal imprisonment rather than state confinement.

This game plan was approved by the trial court, and it later

ran the state sentences concurrently with the federal sentences. Otherwise, there were no other agreements between the parties.

At the sentencing hearing, Achor urged the court to consider imposing minimum sentences for Pettit, stressing the terms of Pettit's federal sentences, and asked the court to consider following the recommendation of the federal judge that Pettit be allowed to enter the federal drug program. The State countered by noting that Pettit deserved some consideration because of his pleas of guilty and his candidness with the court. In addition, the State told the court that it had no objection to Pettit going to the federal penitentiary, however, it could not in good faith suggest that the sentences he got in federal court were appropriate.

At the conclusion of these statements, Judge Langston announced the sentences. Pettit voiced no complaint.

At the Rule 37 hearing before Judge Lessenberry, Judge Langston testified that he did not engage in plea bargaining nor talk with Achor about sentencing. Achor testified that at no time did he tell Pettit that he had prearranged a twenty-year sentence with the State or the judge. In addition, he testified that Pettit fully understood that he could get a life sentence if he pleaded guilty. Moreover, at the plea hearing, the trial judge asked him if he understood that he could receive from ten (10) to forty (40) years or life on each of the aggravated robbery counts and ten (10) years and a $10,000.00 fine on each of the theft counts, the total exposure being up to sixty (60) years in the penitentiary and up to seven life terms plus fines up to $60,000.00. Pettit replied, "Yes, sir." The plea statements signed by Pettit support these facts.

In denying the Rule 37 petition, the court found that there were no plea negotiations, that Pettit did not rely on any negotiations, that Pettit's testimony was not credible, and that Achor represented Pettit well throughout the proceedings.

We will not reverse a trial court's denial of a Rule 37 petition unless its findings are clearly erroneous. *Hudson, supra.* In view of the testimony by Achor and Judge Langston and the statement by Pettit at the plea hearing that he understood the possible penalties he could receive, we find that the trial court's findings are not clearly erroneous. Although there was testimony

at the Rule 37 hearing by Pettit, his father, father-in-law, and wife that Achor had in effect told them he had prearranged a sentence, Judge Lessenberry was not required to believe these witnesses, especially since they had an interest in the outcome of the proceeding. *Id.* At a Rule 37 hearing, the credibility of witnesses is for the trial judge to determine. *Stephens* v. *State*, 293 Ark. 231, 737 S.W.2d 147 (1987).

Pettit also argues that counsel was incompetent because he failed to provide the court with medical records regarding Pettit's addiction to drugs, failed to investigate a known medical defense (mental incompetence), and failed to move to quash Pettit's confession. These allegations are wholly without merit. Pettit has shown neither serious errors nor that he would not have pleaded guilty but for counsel's alleged errors.

## II. *VOLUNTARINESS OF GUILTY PLEAS.*

### A. THE INFLUENCE OF DRUGS.

Appellant argues his guilty pleas were not voluntarily and intelligently entered because he was under the influence of Elavil, a prescribed tranquilizer, on the day of the plea hearing. We hold to the contrary.

At the plea hearing, the following exchange occurred between Pettit and the trial court:

Q. Are you under the influence of any alcohol or narcotic drugs, or have you taken any medication within the last 24 hours?

A. Some Elavil. It's a tranquilizer.

Q. And how much of it have you taken?

A. Just one little hundred milligram tablet.

Q. Does that in any way affect your mental ability at this time?

A. No, sir.

Q. You fully understand the things that are going on?

A. Yes, sir.

Q. Do you understand why we are here today?

A. Yes, sir.

Q. Do you understand the consequence of pleading guilty as I have explained to you?

A. Yes, sir.

Pettit then pleaded guilty to the crimes.

■ At the conclusion of the Rule 37 hearing, the court found that although Pettit was taking Elavil, it had no effect on his pleading guilty. This finding is not clearly erroneous. As illustrated in the testimony above, the trial judge thoroughly questioned Pettit concerning the effect of the tranquilizer upon his mental state. Pettit stated without reservation that Elavil was not affecting his mental ability at the time and that he understood what was going on, why he was in court, and the consequences of pleading guilty. Under the circumstances, we are satisfied that the pleas were voluntary.

### B. RULE 24.5: PLEA AGREEMENTS.

Pettit also contends that guilty pleas were not voluntary because the trail court failed to determine, pursuant to Ark. R. Crim. P. 24.5, whether the pleas were a result of a plea agreement. We disagree.

Rule 24.5 provides as follows:

> The court shall not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. The court shall determine whether the tendered plea is a result of a plea agreement. If it is, the court shall require that the agreement be stated. The court shall also address the defendant personally and determine whether any force or threats, apart from a plea agreement, were used to induce the plea.

■ We have held that it is mandatory under Ark. R. Crim. P. 24.5 that the trial court (1) determine whether the guilty plea was a result of a plea agreement and (2) require that the agreement be stated in court. *Irons* v. *State*, 267 Ark. 469, 591 S.W.2d 650 (1980); *Marshall* v. *State*, 262 Ark. 726, 561 S.W.2d 76 (1978). *See also Zoller* v. *State*, 282 Ark. 380, 669 S.W.2d 434 (1984). The purpose of these requirements is to avoid

the chance of a misunderstanding by the accused of the law and his rights. *McGee* v. *State*, 262 Ark. 473, 557 S.W.2d 885 (1977).

The evidence in the record and the testimony at the Rule 37 hearing clearly reflect that there was no plea agreement. The only agreement between the State and Pettit's counsel concerned the priority of the federal sentences, which was at Pettit's request and to his advantage. Moreover, the record indicates that Pettit understood that his entering of guilty pleas was not pursuant to a plea agreement. First, his counsel testified that Pettit understood that he could receive a life sentence if he pleaded guilty. Secondly, at the plea hearing, Pettit indicated that he understood if he pleaded guilty, he could receive a total sentence of up to sixty years in the penitentiary and up to seven life sentences, plus a fine of up to $60,000.00. If Pettit really believed he was pleading guilty pursuant to a plea agreement by which he would receive only twenty years on all charges, it is obvious he would have spoken up at this time.

Accordingly, we conclude that Pettit fully understood the law and his rights and was not prejudiced by the trial court's failure to determine whether his guilty pleas were a result of a plea agreement. Under the circumstances, his pleas were voluntary. Reversal is not warranted.

### C. CONFESSIONS.

Pettit argues that his pleas of guilty were involuntary because they were simply an extension of his unconstitutional confessions. Since Pettit did not specifically make this argument in his Rule 37 petition or at the Rule 37 hearing, we will not consider it.

### III. *LENGTH OF SENTENCE.*

Pettit argues that the court's imposition of his sentences subjected him to cruel and unusual punishment in violation of the eighth amendment. His contention is without merit.

As noted previously, the trial court sentenced Pettit to fifteen years imprisonment on each aggravated robbery count and five years imprisonment on each theft of property count, the sentences to run consecutively with each other and concurrently with the federal time.

■ We have held that the issue of whether a sentence is illegal is cognizable in a Rule 37 petition. *Hendrix* v. *State*, 291 Ark. 134, 722 S.W.2d 546 (1987). However, we do not have that issue before us since it is undisputed that Pettit's sentences are well within the lawful maximum for the crimes committed. Ark. Code Ann. §§ 5-4-401 & 5-4-403 (1987).

■ Instead, Pettit's argument is essentially that his sentences are too severe under the facts of his case. The question of whether a legally permissible sentence is too severe under the facts of a particular case is not a matter for consideration by this court in a Rule 37 petition, but instead one which addresses itself to executive clemency. *Rogers* v. *State*, 265 Ark. 945, 582 S.W.2d 7 (1979). Thus, we do not consider his argument.

Affirmed.