Kirt WAINWRIGHT *v.* STATE of Arkansas

CR 89-79                                        823 S.W.2d 449

Supreme Court of Arkansas
Opinion delivered January 13, 1992

570

*John Wesley Hall, Jr.*, by: *Craig Lambert*, for petitioner.

*Winston Bryant*, Att'y Gen., *Olan W. Reeves*, Senior Asst. Att'y Gen., for respondent.

PER CURIAM. The petitioner Kirt Wainwright was found guilty by a jury of capital felony murder in 1989 and sentenced to death by lethal injection. This court affirmed. *Wainwright v. State*, 302 Ark. 371, 790 S.W.2d 420 (1990); *cert. den.* ___ U.S. ___, 111 S. Ct. 1123 (1991). Petitioner now seeks permission to proceed in circuit court pursuant to Criminal Procedure Rule 37.[1] The petition contains some forty or more allegations, many of which petitioner concedes were raised only to satisfy procedural considerations with an eye to pursuing a petition for writ of habeas corpus in federal court should that be necessary at a later date. We will address the issues one-by-one in approximately the order raised in the petition.

*Defense counsel was ineffective for failing to challenge the constitutionality of the trial court's limitation of expenses for expert forensic, ballistic, and psychiatric testimony.*

At the time petitioner was tried Ark. Code Ann. § 16-92-108 (1987) set out certain limitations on expenses and fees imposed for court-appointed attorneys for indigent clients accused of criminal offenses. Since that time we found the fee cap statute unconstitutional. *Arnold v. Kemp*, 306 Ark. 294, 813 S.W.2d 770 (1991).

Counsel for appellant requested and received funds in excess of the statutory amount allowed under the statute for expert testing and testimony for his trial, but he did not receive as much as he requested. On appeal, petitioner argued that the trial court erred in denying sufficient funds to secure the services and testimony of a psychiatric expert. We found no error. Petitioner contends that if counsel had challenged the statutory fee cap, the challenge would have been successful and the trial court would have been less hampered in awarding fees for psychiatric and forensic testing and testimony and thus counsel was ineffective.

---

[1] We granted petitioner permission to file a petition which exceeds the ten page limit provided in Rule 37.1(e). The petition now before us contains, with attachments, thirty pages. Nevertheless, he contends that "time and space limitations" prevent him from elaborating on some allegations.

We do not accept petitioner's conclusion.

██ While it can always be said that a defendant could have benefitted from more money to spend on his defense, a petitioner cannot establish that his attorney was ineffective for not securing additional funds merely by reciting testing which could have been done or witnesses which could have been called had there been more money available. Assertions of ineffective assistance of counsel must be examined in light of the criteria set out in *Strickland* v. *Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court held that the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. The criteria apply to both capital sentencing proceedings as well as the guilt phase of a capital trial. *Pruett* v. *State*, 287 Ark. 124, 697 S.W.2d 872 (1985).

██ To prove ineffective assistance of counsel under the *Strickland* standard, the petitioner must show first that counsel's performance was deficient in that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the deficient performance must have resulted in prejudice so pronounced as to have deprived the petitioner of a fair trial whose outcome cannot be relied on as just. Both showings are necessary before it can be said that the conviction or death sentence resulted from a breakdown in the adversarial process that renders the result unreliable. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner has the burden of overcoming that presumption by identifying the acts and omissions of counsel which when viewed from counsel's perspective at the time of trial could not have been the result of reasonable professional judgment. Even if counsel's conduct is shown to be professionally unreasonable, the judgment must stand, unless the petitioner demonstrates that the error had a prejudicial effect on the actual outcome of the proceeding. A reasonable probability that, but for counsel's conduct the result of the proceeding would have been different, is a probability sufficient to undermine confidence in the outcome.

██ Trial counsel sought expenses to pay for additional

psychological expert testimony, to employ an independent forensic expert to study the autopsy findings, to employ a ballistics expert, and for a sociologist to help in preparing the defense and to testify in mitigation of punishment. The requests were denied, and petitioner has not demonstrated that had counsel on appeal challenged the fee cap that the judgment would have been reversed on appeal, especially since this court had previously upheld the statute's constitutionality. *Ruiz* v. *State*, 269 Ark. 331, 602 S.W.2d 625 (1980). Trial counsel presented a zealous defense in behalf of an accused against whom there was ample evidence of guilt. Petitioner has offered no factual substantiation that convinces us that there is a reasonable probability that the outcome of either the guilt or sentencing phases of the trial would have been different had the jury heard specific testimony of a specific witness. Petitioner's most specific assertion is that Dr. Irwin Stone, a ballistic's expert, could have testified conclusively that an alleged accomplice Dennis Leeper fired the weapon used to kill the store clerk. This allegation, however, falls short of establishing that counsel's failure to raise the fee cap issue on appeal deprived the petitioner of a fair trial and appeal whose outcome can be relied on as just.

*Attorneys at trial were ineffective in failing to object to the trial court's exclusion of venirepersons Steed and Johnson for cause.*

■ Two prospective jurors, Steed and Johnson, were excused by the court after each expressed a preference for imposing a death sentence in cases where the evidence showed that the murder had been committed in the course of a robbery. Petitioner asserts that counsel should have objected under *Witherspoon* v. *Illinois*, 391 U.S. 510 (1968). In *Witherspoon* the Court held that a state may not constitutionally execute a death sentence imposed by a jury culled of all those who revealed in voir dire examination that they had conscientious scruples against, or were otherwise opposed to, capital punishment. In *Adams* v. *Texas*, 448 U.S. 38 (1980); *see also Wainwright* v. *Whitt*, 469 U.S. 412 (1985), the court said that as a general proposition a juror may not be challenged for cause based on his views about capital punishment, unless those views would prevent, or substantially impair, the performance of his duties as a juror in accordance with his instructions and his oath. It is the trial court which must decide if

the juror's views would prevent or substantially impair performance of his or her duty as a juror, and great deference must be given to the trial judge who sees and hears the potential jurors. *Pickens* v. *State*, 301 Ark. 244, 783 S.W.2d 341 (1990).

Here, Steed said that if it were proven that the accused took a life, his life should be taken too. He further stated that if the state proved its case that a life had been taken, he probably would not consider imposing a sentence of life imprisonment without parole. He also said that he would be able to follow the court's instructions and give consideration to both life without parole and death as appropriate punishments. Venirewoman Johnson said that she believed that the state had the right to take a life as punishment for certain crimes and that she would be able to vote to impose the death penalty in a case where capital murder was proven. She further stated at one point that she would be unwilling to consider life without parole as a punishment where a life had been taken during a robbery. Although she said that she would be able to follow the court's instructions and at least give consideration to both possible punishments, she also expressed several times a leaning toward the death penalty.

Under these circumstances, when considering the deference which must be given to the trial court which was in a position to hear the words of the venirepersons and consider their demeanor, we cannot say that the court was wrong to excuse either Steed or Johnson for cause. Moreover, it is not clear how petitioner could have been prejudiced by the trial court's action since both the jurors clearly looked upon capital punishment with favor.

*Counsel was ineffective in not raising and supporting a motion to suppress petitioner's statements on the ground that the statements were coerced.*

Counsel challenged the admissibility of four statements made by the petitioner to the police on the ground that the statements were not freely and voluntarily given. Only the fourth statement was incriminatory. After a pretrial hearing on the voluntariness of the statements, the trial court ruled that the statements were admissible. The issue of the voluntariness of the second statement and the inculpatory fourth statement was raised on appeal. This court made an independent determination

of the voluntariness of the statements and upheld the trial court's decision. Counsel also challenged two other statements, one made during a search of his cell and another made to his co-defendant Leeper. These statements were introduced into evidence in the penalty phase of the trial. We sustained the trial court's ruling that those statements were admissible. Petitioner contends that Leeper in a post-trial interview said that the first statement petitioner gave, which was not incriminatory, and the statement made during the cell search were both coerced. He alleges that there are potentially other witnesses who could corroborate Leeper's assertion.

▮ Trial counsel challenged the admissibility of the statements at trial, and petitioner has offered no convincing factual support for the allegation that counsel could have shown that the statements were inadmissible had he called Leeper or any other specific witness to testify that the statements were coerced. The substantiation provided by petitioner to demonstrate that counsel could have produced further evidence of coercion is too weak to overcome the presumption that counsel was effective.

*Counsel was ineffective for failing to timely object and support his motion that the jury did not reflect a fair cross-section of the community and for failing to challenge the constitutionality of Ark. Code Ann. §§ 16-32-103—105 (1987).*

After *voir dire* of the jury panel had begun, counsel for the petitioner moved to quash the panel on the ground that it did not represent a cross-section of the community. The court denied the motion because it was not timely made and because there was no showing that the venirepersons did not represent a cross-section and random sample of the community. Petitioner alleges that counsel had facts available to show that about thirty percent of the people in Nevada County were black but the jury panel was only approximately 15% black. He further argued that counsel should have raised the issue of whether choosing a jury panel from a list of registered voters, as was done in this case, is constitutional under the Sixth and Fourteenth Amendments.

▮ As to whether counsel was ineffective under the criteria of *Strickland* in failing to object in a timely manner to the makeup of the jury panel before voir dire began or in failing to present evidence to show that the panel did not represent a fair

cross-section of the community, petitioner has not shown that he was prejudiced in that he has not demonstrated that the jury which tried him was not selected in accordance with the requirements of the Sixth Amendment. Before it can be said that counsel was ineffective, petitioner must establish that some distinctive group such as women or black persons was excluded. *See Duren v. Missouri*, 439 U.S. 357 (1979). Petitioner has not met his burden of demonstrating that counsel could have presented facts to show that there had been a systematic exclusion of black persons from the jury panel in this case. He has also failed to show in his petition that the choosing of jurors from a list of registered voters denied him a fair trial under the criteria set out in *Strickland*. In a related allegation, petitioner asserts that counsel was ineffective in failing to establish a prima facie case of purposeful discrimination by the state in exercising a peremptory challenge to exclude Gladys Blakely. There is no merit to the argument because, as we held on appeal, the prima facie showing was not made at trial, but even if it had been made, the state clearly offered a neutral explanation for its challenge of Ms. Blakely, i.e. her views on the death penalty.

*Counsel was ineffective in failing to object "through comparative review" to petitioner's sentence as violative of the cruel and unusual punishment clause of the Eighth Amendment as caused by passion or prejudice.*

■ This court has committed itself to comparative review of death sentences to assure evenhandedness in the application of the death penalty in this state. *Wilson v. State*, 295 Ark. 682, 751 S.W.2d 734 (1988). Petitioner was afforded this review on appeal; therefore, counsel was not ineffective with respect to securing a comparative review on appeal of petitioner's death sentence with sentences imposed in other murder cases.

■ If petitioner is contending that counsel should have moved for the trial court to reduce the sentence to life without parole, he has provided nothing to demonstrate that the jury's recommended sentence was the result of passion or prejudice or that the sentence was not otherwise appropriate under the laws of this state and the United States. Petitioner argues that the facts that Leeper was found to have gunpowder residue on his hands, that Leeper pleaded guilty, and that another

co-defendant who drove the car used in the robbery was acquitted should be noted when considering whether the death penalty should have been imposed. There was ample evidence from which it could be fairly concluded that petitioner committed the crime with which he was charged, thus, neither the evidence that Leeper had gunpowder residue on his hands nor the fact that the death penalty was not imposed on the co-defendants establishes that there was a reasonable probability that counsel could have successfully challenged the death sentence in the trial court on the basis of comparative review.

*Counsel was ineffective in not presenting evidence to support the defense that petitioner did not commit the murder and the mitigating circumstance that the murder was committed by another person.*

Petitioner contends that had counsel presented expert testimony relative to the amount of gunpowder residue on Dennis Leeper's hand and called petitioner to testify, the jury would have concluded that he was not the triggerman and either convicted him of first degree murder or sentenced him to life imprisonment without parole for capital murder.

As we said on direct appeal, there was evidence which clearly supported the state's charge that the petitioner killed the store clerk in the course or furtherance of a robbery. At trial petitioner raised the defense that he did not commit the homicidal act, but evidence was adduced which indicated that several witnesses saw petitioner run from the convenience store immediately after the victim was shot. Octavia Hardamon, who personally knew petitioner, said that she saw petitioner leave the store with a pistol in his hand. Considering the evidence produced by the state, we cannot say that petitioner has shown that there is a reasonable probability that the jury would have concluded that he was not the triggerman if a ballistics expert had been called to testify.

Petitioner's allegation that the jury would have been swayed by his testimony had he been called is conclusory. A petitioner who claims that counsel was ineffective for not calling him to testify must state specifically what the content of his testimony would have been and demonstrate that his failure to testify resulted in actual prejudice to his defense. *Isom v. State,*

284 Ark. 426, 682 S.W.2d 755 (1985). Petitioner has not set out what his testimony would have been; therefore, it cannot be said that the defense was prejudiced by the failure to testify. Moreover, the decision to advise a defendant not to take the stand, even if it proves improvident, is a tactical decision within the realm of counsel's professional judgment, and matters of trial tactics and strategy are not grounds for post-conviction relief. *Isom*, 284 Ark. 426, 682 S.W.2d 755; *Watson* v. *State*, 282 Ark. 246, 667 S.W.2d 953 (1984); *Leasure* v. *State*, 254 Ark. 961, 497 S.W.2d 1 (1973). Petitioner has presented nothing to show that counsel here did more than merely advise his client not to testify.

*Petitioner was denied due process and a fair trial in that police misconduct induced a factually inaccurate statement from Octavia Hardamon and inaccurate testimony followed from that statement.*

Petitioner states that he is unprepared to support factually the allegation that Octavia Hardamon's trial testimony was perjured but that he makes the allegation for the purposes for preserving it for further review, presumably in federal court. Petitioner contends that at the least Hardamon was grossly mistaken in her identification because the physical evidence and other witnesses contradict it. He has attached the affidavit of a woman who states that Hardamon has informed her of circumstances surrounding the giving of her statement to the police which casts doubt on the reliability of her account.

Rule 37 was designed as a means to collaterally attack a conviction. *McCroskey* v. *State*, 278 Ark. 156, 644 S.W.2d 271 (1983). Petitioner is clearly attempting to raise questions about the witnesses's account which constitutes a direct attack on the judgment. The credibility of witnesses, new evidence, and rebuttal evidence are matters for trial since such issues constitute a direct attack on the judgment. See *Chisum* v. *State*, 274 Ark. 332, 625 S.W.2d 448 (1981).

*The evidence does not support either capital murder or the death sentence.*

Petitioner asserts that he is innocent of capital murder and that the death sentence is not supported by the evidence. He asks this court to set aside the conviction, set aside the death penalty,

or reduce the conviction to first degree murder. The argument is a challenge to the sufficiency of the evidence which is not cognizable under our post-conviction rule. *McCroskey*, 278 Ark. 156, 644 S.W.2d 271.

*Appellate counsel was ineffective for failing to argue trial error in sustaining the state's objection to trial counsel's attempt to impeach Dr. Fahmy Malak's testimony.*

At trial the state objected when petitioner sought to impeach the medical examiner Dr. Malak about discrepancies in his report in unrelated case. The objection was sustained. Petitioner argues that his counsel should have raised the issue on appeal. He further states that counsel did not comply with Supreme Court Rule 11(f) and abstract the adverse ruling.

If counsel omits an issue which could have been raised on appeal and the convicted defendant later claims under Rule 37 that the attorney was ineffective for failing to argue it, the petitioner must demonstrate that counsel's action amounted to an error of such magnitude that it rendered counsel's performance constitutionally deficient under the criteria set out in *Strickland*; *Troutt* v. *State*, 292 Ark. 192, 729 S.W.2d 139 (1987). The burden is on the petitioner to state facts in the Rule 37 petition which show that counsel failed to raise some possibly meritorious issue. *Howard* v. *State*, 291 Ark. 633, 727 S.W.2d 830 (1987). Petitioner has not met his burden of establishing that there would have been any merit to the argument even if it had been raised on appeal. An attorney need not advance every possible argument regardless of merit. *Howard*, 291 Ark. 633, 727 S.W.2d 830; *see* *Jones* v. *Barnes*, 463 U.S. 745 (1983).

*Trial counsel was ineffective in twenty-four additional instances.*

Petitioner lists "for the record" twelve instances where counsel is alleged to have been ineffective. He lists a further twelve instances of counsel's alleged ineffectiveness "to preserve these issues for habeas review." The presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *Strickland* v. *Washington*, 466 U.S. 668 (1984). The burden of demonstrating some actual prejudice arriving from counsel's conduct falls on petitioner. The petitioner here has not

met that burden in that the twenty-four allegations are essentially conclusory statements apparently made to exhaust state remedies which do not provide a basis for a finding of ineffective assistance of counsel. *See Reynolds* v. *State*, 248 Ark. 153, 450 S.W.2d 555 (1970).

*An assistant Attorney General's conduct entitles petitioner to relief in some form.*

■ Finally, petitioner states that an assistant Attorney General's decision to seek a dissolution of the stay of execution in this case amounted to misconduct because another assistant Attorney General had agreed to allow petitioner's counsel all the time needed to prepare his petition for post-conviction relief. Petitioner states that he is entitled to "relief of some form" and that he desires to point out that any procedural default in federal court is because of misconduct of the state. We find no ground under Criminal Procedure Rule 37 to grant petitioner relief in any form on this allegation.

Petition denied.