Jimmy Lane WICOFF *v.* STATE of Arkansas

CR 94-338                                    900 S.W.2d 187

Supreme Court of Arkansas
Opinion delivered June 19, 1995

*Richard S. Paden*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. This appeal concerns post-conviction relief sought by the appellant, Jimmy Lane Wicoff, who

was convicted of sexual abuse in the first degree and incest with his ten- and eleven-year-old stepdaughters, and sentenced to ten years' imprisonment on each charge, with the sentences to run consecutively. Wicoff appealed his case to the Court of Appeals, which, in an unpublished opinion, affirmed his conviction. *Wicoff v. State*, CACR 91-249 (Ark. App. September 30, 1992). Thereafter, he filed a petition for post-conviction relief in circuit court, alleging several bases upon which his counsel was ineffective. Following a hearing, the circuit court denied Wicoff's petition. We reverse and remand for a new trial because Wicoff was denied effective assistance of counsel.

This court will reverse a trial court's denial of post-conviction relief only if its findings are clearly erroneous or clearly against the preponderance of the evidence. *Vickers* v. *State*, 320 Ark. 437, 898 S.W.2d 26 (1995); *Pettit* v. *State*, 296 Ark. 423, 758 S.W.2d 1 (1988). In *Vickers*, this court reiterated its previous summary of the standard of review applicable to ineffective assistance of counsel claims in *Pogue* v. *State*, 316 Ark. 428, 432-33, 872 S.W.2d 387, 389 (1994), as follows:

> [C]laims of ineffective counsel . . . must be examined in light of the standard set in *Strickland* v. *Washington*, 466 U.S. 68 (1984). That standard provides a two-prong test that must be met: (1) that the deficient performance of counsel must have resulted in errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) prejudice resulted which deprived the petitioner of a fair trial. *Id.* There is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance, and the petitioner alleging differently has the burden of overcoming that presumption. *Wainwright* v. *State*, 307 Ark. 569, 823 S.W.2d 449 (1992). In assessing trial counsel's performance, we make every effort to eliminate the distorting effects of hindsight. *Burnett* v. *State*, 310 Ark. 202, 832 S.W.2d 848 (1992).

We thus must address Wicoff's allegations of ineffective assistance of counsel under the standards set forth in *Strickland* v. *Washington, supra.*

Wicoff first alleges that his counsel, Baxter County Public

Defender Christopher O'Hara Carter, was aware of and had substantial information of evidence of the victims' prior sexual conduct with other persons that would have been relevant to issues at trial. He urges that Mr. Carter failed to file a motion under Arkansas's Rape Shield Statute, codified at Ark. Code Ann. § 16-42-101 (1987) *et seq.*, to show that the victims' prior sexual conduct was relevant for the purpose of impeaching their testimony by establishing that the two girls were involved in prior sexual abuse with other parties. Wicoff specifically claims that these episodes were relevant for the purpose of explaining why the victims, albeit of tender years, could have testified in such graphic detail about matters of sexual contact separate from the current incident and that their allegations were manufactured. He further asserts that in the absence of this evidence, the jury was free to conclude erroneously that the victims were too young to have fabricated a story with such explicit detail.

Attached to Wicoff's A.R.Cr.P. Rule 37 petition was an investigative narrative completed by a Department of Human Services caseworker that indicated that, in 1988, the girls had been molested by two teenage male babysitters. Further, Wicoff's attorney, Mr. Carter, admitted at the Rule 37 hearing that he had learned from his client's mother that the girls' father, Randall Ciesielski, had been accused of molesting them on two occasions in Illinois. He further acknowledged that he had been furnished an Arkansas State Police report that indicated that the eleven-year-old had made allegations to Sergeant Mary Kesterson that Wicoff's brother, Johnny Wicoff, had "showed his sperm" to her and wanted her to touch his sperm.

At the Rule 37 hearing, Mr. Carter explained his failure to file a motion relating to the victim's prior sexual conduct, stating:

> I was not satisfied with the information that I was able to discover concerning the prior sexual episodes of the children. However, as a defense attorney, I am not entitled to records of other incidents, especially records held by children in youth services involving sexual allegations. The information I had through one source or another was probably more than the Supreme Court said I was entitled to.

Mr. Carter further explained that, while he subpoenaed Mr. Ciesiel-ski, he chose not to call him as a witness at Wicoff's trial because, in addition to denying the allegations made against him, Mr. Ciesielski would have testified that he had talked with his daughters and had "believed their story" with respect to the allegations against Wicoff. He further stated that he was aware that the victims had also made an allegation about a boy in Illinois.

Mr. Carter's decision not to request a hearing under Arkansas's rape-shield statute to explore the relevance of evidence of the victims' prior sexual conduct, may not, standing alone, be sufficient to establish ineffective assistance of counsel. However, when we consider this circumstance together with counsel's failure to call as a witness Wicoff's grandmother, Ms. Dickerson, who would have testified that the eleven-year-old had told her that she had fabricated the allegations against Wicoff, we must conclude that Mr. Carter's conduct falls below an objective standard of competence. These acts of omission clearly resulted in prejudice to Wicoff.

Ms. Dickerson testified at the Rule 37 hearing that the eleven-year-old victim had told her that she had fabricated the incident because she was mad at Wicoff, as he would not take her to Illinois to visit her grandmother. Ms. Dickerson further stated that she had informed Mr. Carter of this conversation. Mr. Carter explained that he did not call Wicoff's grandmother to testify because she was a relative and that, if her testimony would have had any influence on the jury, it would have only "infuriated" them. He further contended that, based on his arguments and his objections to other evidence, his belief was that the case would have been dismissed, or, alternatively, that it would have been reversed on appeal. According to Mr. Carter, he had subpoenaed Ms. Dickerson and other witnesses who were present at the trial and prepared to testify, but he made the decision not to call her only after the State had presented its case.

Granted, counsel must use his own best judgment to determine which witnesses will be beneficial to his client. *Hicks* v. *State*, 289 Ark. 83, 709 S.W.2d 87 (1986). We have stated that matters of trial strategy do not form the basis for post-conviction relief. *Pogue* v. *State*, 316 Ark. 428, 872 S.W.2d 87 (1986); *McDaniel* v. *State*, 282 Ark. 170, 666 S.W.2d 400 (1984). How-

ever, we recognize that such strategic decisions must still be supported by reasonable professional judgment pursuant to the standards set forth in *Strickland* v. *Washington, supra*, and that our ultimate inquiry must be to determine "whether counsel's assistance was reasonable considering all the circumstances." 466 U.S. at 688. Pursuant to these standards, we granted post-conviction relief in *Russell* v. *State*, 302 Ark. 274, 789 S.W.2d 720 (1990), where trial counsel failed to call, in Russell's trial for murder, a witness whose testimony could have created a reasonable doubt in the minds of the jurors, as this evidence could have established that the State's eyewitness had a motive to kill the victim.

While Mr. Carter, unlike counsel for *Russell*, did offer a reason for not calling Ms. Dickerson as a witness, stating that she was a relative, we cannot say that, under the facts presented, his decision was supported by reasonable professional judgment. At trial, the evidence against Wicoff was limited to the testimony of the two girls. The doctor who examined them testified that there was no physical evidence of sexual abuse, and that, in his opinion, the girls' accounts of the incidents were reliable. As such, the credibility of the girls' testimony was highly relevant, as their testimony was, in essence, the State's only evidence against Wicoff. Ms. Dickerson's testimony that the eleven-year-old had admitted to her that she had fabricated the incident would have served to impeach the minor's credibility. Although Ms. Dickerson was available to testify to this conversation at trial, counsel for Wicoff did not call her or any witnesses on his behalf. Counsel for Wicoff readily admitted, however, through his own testimony at the Rule 37 hearing, that Ms. Dickerson's testimony "would have shed doubt on Jimmy's guilt [sic]."

Under these circumstances, we have no hesitancy in holding that there was a reasonable probability that the outcome of the trial would have been different had Mr. Carter fully explored information concerning the victims' prior sexual contact, and, in particular, had he called Ms. Dickerson as a witness. Both the information regarding the victims' sexual conduct and Ms. Dickerson's testimony could have established that the girls had fabricated the allegations against Wicoff.

Because we reverse and remand for retrial for the reasons

stated, it is not necessary that we examine the remaining allegations of ineffective assistance of counsel, as in all probability they will not reoccur during the course of a subsequent trial.

Reversed and remanded.

GLAZE, CORBIN and BROWN, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. The majority opinion concludes that there was ineffective assistance of counsel by the public defender. Because the appellant has not furnished this court with a record of the original trial, we have been forced to make a decision largely in the dark. I cannot reach a conclusion of ineffectiveness based on piecemeal evidence without knowing what transpired at the original trial. Moreover, the allegations of the appellant appear to be largely matters of trial strategy. I would affirm.

The majority sets forth the correct test for assessing ineffectiveness at trial: (1) error committed by trial counsel, and (2) prejudicial impact deriving from that error. *Strickland* v. *Washington*, 466 U.S. 68 (1984). We have stated that for the error of trial counsel to warrant a new trial, it must be so prejudicial as to have affected the outcome of the trial. *Wainwright* v. *State*, 307 Ark. 569, 823 S.W.2d 449 (1992).

The majority's reversal in the instant case turns on the public defender's failure: (1) to explore calling the girls' natural father who was previously suspected of molesting the girls, and (2) to call the defendant's grandmother who told trial counsel that one of the victims said what she did about Wicoff because she was mad at him for not taking her to Illinois.

In the past, this court has looked to the abstract or record to determine the effectiveness of counsel at trial. *See, e.g., Bowers* v. *State*, 292 Ark. 249, 729 S.W.2d 170 (1987); *Jeffers* v. *State*, 280 Ark. 458, 658 S.W.2d 869 (1983). In this case, we do not know how the public defender conducted himself in cross-examining State witnesses, how he argued the case, and how he presented Wicoff's defense in general. It is extraordinarily difficult, if not impossible, to conclude that the outcome of a defendant's trial was altered by the absence of two witnesses without knowing what else took place at trial. Most importantly, we have no idea what the testimony of the two victims was.

I also see no reason to second guess the public defender's conclusions about the two witnesses. The trial court, who presided over the trial, found that Wicoff's complaints about trial counsel were a matter of trial strategy. In the same vein, this court has repeatedly stated in Rule 37 cases that the decision to call certain witnesses is largely a matter of trial strategy. *Tisdale* v. *State*, 311 Ark. 220, 843 S.W.2d 803 (1992); *Mays* v. *State*, 303 Ark. 505, 798 S.W.2d 75 (1990); *Stewart* v. *State*, 295 Ark. 48, 746 S.W.2d 58 (1988); *Tackett* v. *State*, 284 Ark. 211, 680 S.W.2d 696 (1984).

The public defender testified at the Rule 37 hearing that he was fearful about calling the victims' natural father, Randall Ciesielski, because he believed that the father would support the girls' accusations. There is, too, the almost certain fact that any suggestion of the father's prior sexual conduct with the girls would have been excluded under the Rape Shield Act, codified at Ark. Code Ann. § 16-42-101 (1987). Thus, counsel's failure to pursue calling Mr. Ciesielski appears eminently reasonable.

With regard to the grandmother, Ethel Dickinson, the public defender believed that her testimony would have been suspect due to her relationship with the defendant and would have alienated the jury. I cannot say that the public defender's judgment was clearly in error. The majority suggests that the public defender admitted Ms. Dickinson's testimony would "shed doubt" on Wicoff's guilt and, thus, essentially admitted his own ineffectiveness. I do not read his testimony that way. What he stated was that the grandmother's testimony would shed doubt on the defendant's guilt, but he then balanced this against other factors and decided not to call her. He gave these reasons for not calling her at the Rule 37 hearing:

> The first reason, and probably the most obvious, is she's a relative. And putting a relative on the stand who will basically say, "This is what the girls told me," I don't think has much influence on a jury and, if anything, would more infuriate a jury, by just calling a relative saying, "This is what they told me, therefore he should be acquitted." In addition, I believe that, based on the record, I had established up to that point, based on my arguments based on the Johnson case and on Dr. Wilber's testimony, that the case should have been at that point dismissed by the Court;

and if it wasn't, the jury would have found him not guilty, and then take it a step further that, if he was found guilty, the Court of Appeals would reverse it.

In short, it appears that the public defender decided to stand on his motion for a directed verdict and not call any witnesses. That is a strategic decision.

Prejudicial error should not be considered in a vacuum but assessed in light of all the pertinent facts. Without knowing what happened at the first trial, I cannot say that the public defender's decisions about two witnesses affected the outcome of the trial. To do so insinuates this court into the role of plotting trial strategy without a sufficient basis for doing so.

GLAZE and CORBIN, JJ., join in this dissent.