Warren E. SUMLIN *v.* STATE of Arkansas

CR 78-217                           617 S.W. 2d 372

Supreme Court of Arkansas
Opinion delivered June 22, 1981

*Manuel E. Pruitt*; and *Warren Sumlin, pro se*, for appellant.

*Steve Clark*, Atty. Gen., by: *Jack W. Dickerson*, Asst. Atty. Gen., for appellee.

*Len W. Holt*, amicus curiae.

Darrell Hickman, Justice. Warren Sumlin was convicted of capital murder and sentenced to death. The charge was that he was an accessory to the murder of J. Y. Cooper. Cooper was killed by Warren Sumlin's wife who took Cooper's wallet and vehicle. The vehicle was to be used in an escape that the Sumlins planned.

Sumlin was in the Columbia county jail in the fall of 1977, awaiting extradition to California. While in jail he married Ruth Sumlin on the 2nd day of October, 1977. Together they planned Warren's escape from jail. Ruth Sumlin was to get a man named J. Y. Cooper drunk and steal his car which was to be used in flight. Afterwards Ruth was to force the jailer at gunpoint to free Sumlin. The State's case was uncontroverted in most regards.

There was substantial evidence to support the jury's finding that Sumlin was an accomplice to the murder of Cooper and that the murder was committed in the furtherance of two felonies, one to rob Cooper and steal his vehicle and the other to break Sumlin out of jail. However, because of the possibility of prejudice during the sentencing phase of the trial and because of our prerogative of comparative review in death cases, we reduce the sentence of death in this case to life imprisonment without parole.

Briefly, the facts are that Warren and Ruth Sumlin had discussed the escape in the jail and the plan was overheard by several other people. Ruth obtained a pistol ten days before the escape. J. Y. Cooper, an older man, had shown an interest in Ruth Sumlin and Ruth was to go with Cooper to a remote area, get him drunk, and take his vehicle. Ruth had gone out with Cooper and, according to her testimony, had sexual intercourse with him but because Cooper tried to attack her, she shot him. She admitted taking Cooper's car, going to the jail, and using a gun and knife to force the jailer to release Sumlin. The other cells also were opened and four other prisoners escaped. Two prisoners, Jackie Moore and Thurman Moore, accompanied the Sumlins in flight. A wild escapade followed the escape. At one time when both of

the Moores were in the front seat of the vehicle, they were shot at the same time, evidently by both Sumlins who were in the back seat. Jackie Moore was shot in the head and Thurman Moore, Jr., was shot twice in the neck. Both were able to escape and both testified against Warren Sumlin. A good samaritan who stopped to assist what appeared to be Mrs. Sumlin having difficulty with the vehicle was also shot by Warren Sumlin. Fortunately he was not killed. When a policeman finally cornered the Sumlins, Warren Sumlin tried to escape and in doing so rammed a vehicle which had stopped so that the driver could assist the policeman.

Ruth Sumlin was tried separately on identical charges and was found guilty and sentenced to life without parole. At her trial she testified that it was Warren Sumlin who killed Cooper. This was contrary to strong evidence that Ruth had committed the deed. Ruth also testified that she was under the influence of Warren Sumlin and that the escape was Warren's plan, not hers. At Warren Sumlin's trial Ruth recanted her previous testimony and admitted that she killed Cooper. She claimed that the entire idea of breaking Warren Sumlin out of jail was her idea. Otherwise, Ruth's testimony paralleled that at the first trial.

The escape plan was common knowledge in the jail. Thurman Moore, a fellow prisoner, testified that Sumlin told him that Ruth was to "fool around" with J. Y. Cooper in order to get Cooper's car for the jail break. Ruth was supposed to get Cooper drunk and drop him off somewhere. Moore said he questioned Sumlin as to what Ruth would do if Cooper did not cooperate. Moore said Sumlin simply made a motion with his index finger as if he were pulling the trigger. Moore said that he was informed of all the details of the escape and had been told if the jailer did not cooperate, Ruth was going to shoot him.

Troy Lee Biggs testified that he was in the Columbia County jail when the escape occurred and that at one time he was in the same cell with Sumlin. Biggs testified that the Sumlins talked to each other through a jail window. He said he did not know anything about the escape.

Donald Lee Biddle was in the jail and he said that he knew about a week before the escape that it was going to take place. He said that Ruth Sumlin came to the jail almost every day and talked to her husband through a window. He heard them talking about getting J. Y. Cooper's car before the escape and heard the plans for both Sumlins to leave in the vehicle. He said that at one time Ruth Sumlin told Warren Sumlin that Cooper might not drink enough and Warren Sumlin told Ruth to do it the best way she could.

Jackie Moore testified that Warren Sumlin had told him he wanted to get out of jail. Moore had heard Warren ask Ruth to get him out.

Counsel for Sumlin raises six objections on appeal. First, it is argued that the aggravating circumstances do not exist beyond a reasonable doubt and do not justify the sentence of death. The jury found five aggravating circumstances: Sumlin had committed a prior felony with an element involving violence or creating a substantial risk of death or serious injury to another; in the commission of the capital murder he created a great risk of death to another person other than the victim; the murder was committed for the purpose of avoiding arrest or effecting an escape; the murder was committed for pecuniary gain; and, the murder was committed to disrupt or hinder a government function.

The wild escapade that Sumlin participated in cannot be isolated into different instances as he argues. The theft of the vehicle, the jail escape, and the events thereafter were all part of one plan. *Ruiz* v. *State*, 265 Ark. 875, 582 S.W. 2d 915 (1979). If Sumlin were indeed an accomplice to the murder of Cooper, the jury could have found that other people were threatened with death or serious injury. For example, the jailer was forced at gunpoint to empty the cells.

There is evidence the murder was committed for pecuniary gain because Cooper's car and wallet were stolen. The wallet contained twenty or twenty-five dollars. It is possible that the jury might not have been justified in finding that the murder was committed both to effect an escape and to

disrupt or hinder a government function. These seem to be redundant findings.

Appellant's counsel argues that through comparative review the death sentence should be reduced to life imprisonment without parole and we agree with this argument. In *Collins* v. *State*, 261 Ark. 223, 548 S.W. 2d 106 (1977), *cert. den.* 434 U.S. 878 (1977), we discussed this court's responsibility in reviewing death penalty cases in relation to other death cases. We have done that in this case. In this case it would also be appropriate to compare the sentence that Ruth Sumlin received with the sentence imposed on Warren Sumlin because both were charged with, and convicted of, the same crime. We compare the death sentence in this case to all of those that have been imposed and reviewed since *Collins* v. *State, id.* We also consider the fact that error may have been committed during the sentencing phase. Using these criteria, we conclude that the death penalty in this case ought to be reduced to life without parole.

It is argued that the trial court committed error in forcing Ruth Sumlin to testify against her husband. Appellant claims that Ruth's testimony was privileged. There is a privilege for conversations between a husband and wife which involve confidential communications that are not intended for disclosure to any other person. That privilege is contained in Rule 504, Uniform Rules of Evidence, and may be claimed by either spouse in a criminal proceeding. Warren Sumlin claimed the privilege in this case. The State argued below that because Ruth Sumlin had testified to the conversations in her trial, the so-called confidential communication requirement was breached. That is, Ruth had told a third party the conversations. At first the trial court seemed to agree with the State's position. Later the court ruled that Ruth Sumlin could not testify as to any conversation which was confidential and was intended to remain so. During Ruth's testimony the State attempted to impeach her by using testimony from Ruth's trial and some of that testimony included conversations between Ruth and Sumlin. For example, the State quoted some of Ruth Sumlin's prior testimony in which she said she was supposed to get J. Y. Cooper's car in any way that she could. This testimony no

doubt could have been considered by the jury in determining whether Sumlin was an accomplice to the murder. However, we cannot say this conversation was confidential since one witness testified that he overheard this same conversation in jail.

Certainly a wife can be called as a witness against her husband and be required to testify concerning what she heard, saw, and observed in relation to a criminal charge. In *Huckaby* v. *State*, 262 Ark. 413, 557 S.W. 2d 875 (1977), we so interpreted the husband-wife privilege, excluding only confidential conversations. The United States Supreme Court in *Trammell* v. *United States*, 445 U.S. 40 (1980), recognized our posture as being one that would not violate any constitutional right. We cannot say that any of Ruth Sumlin's testimony breached the confidential privilege. The defense points to no part of her testimony which was confidential in the sense that a third party did not hear it. Sumlin and his wife talked through a jail window, the plan was common knowledge, and the only testimony Ruth gave at her former trial or during this trial that we conclude could be privileged was that conversation noted above. Consequently, we find no prejudicial error was committed.

Appellant argues that there was insufficient evidence to sustain the conviction. That is an argument with the facts. If there was substantial evidence that Sumlin was an accomplice to the murder of Cooper, then the judgment of the jury must stand. It is irrelevant that Warren Sumlin did not pull the trigger if he aided, solicited, or encouraged Ruth Sumlin in committing the murder. Ruth Sumlin was a person with no criminal background when she met and married Sumlin, who was in jail at the time. She was nine hours short of completion for a degree at a state college, and the evidence is overwhelming that Sumlin had some influence or control over her actions. There was one witness who testified that Warren Sumlin had used Ruth as a prostitute.

There is an objection that some jurors were excused for cause by the State in violation of the rule stated in *Witherspoon* v. *Illinois*, 391 U.S. 510 (1968). We have examined the testimony and could find no evidence that any juror was

excused who should not have been. The court decided that if a juror would automatically vote against the death penalty that juror should be excused.

Appellant's counsel argues that there was an error caused by the court reporter's failure to record the entire voir dire proceedings. The record reflects that counsel for the appellant requested that only that part of the voir dire where an objection was made be recorded. We know of no precedent that says a voir dire has to be recorded in its entirety and in the absence of any specific evidence of prejudice this argument must fail.

Warren Sumlin filed a comprehensive and extensive pro se brief which he swears he prepared himself but which was undoubtedly prepared by an attorney or with the assistance of an attorney. In his pro se brief Warren Sumlin raises numerous arguments, many of which are related to the effectiveness of his counsel or to errors that were not raised at the trial level. We have reiterated time and again that the question of effectiveness of counsel may not be raised for the first time on appeal. *Haynie* v. *State*, 257 Ark. 542, 518 S.W. 2d 942 (1975). We do not consider even in a capital case these arguments which are made for the first time on appeal unless the issue is of such magnitude that it would require us to take note of an error which involved a fundamental deprivation of the right to a fair trial. *Wicks* v. *State*, 270 Ark. 781 (October 20, 1980). Sumlin argues that it was error for a gun and wallet taken from his wife's purse to be admitted into evidence. We discussed these same items in the case of *Sumlin* v. *State*, 266 Ark. 709, 587 S.W. 2d 571 (1979) and concluded that those items were admissible in the trial against Mrs. Sumlin. They are admissible against Warren Sumlin for the same reason. Actually Warren Sumlin does not appear to have standing to raise that issue. *See Koonce* v. *State*, 269 Ark. 96, 598 S.W. 2d 741 (1980). Even so, Sumlin argues that the officers changed their stories after Ruth Sumlin's trial and placed the wallet on him at the time of his arrest and not in her possession. There was no mention made of this inconsistency below and in any event it would not affect the admissibility of the wallet because it would have been seized incidental to his arrest.

Sumlin argues that it was error for a witness, Bill Gentry, to testify that Sumlin had acted as a procurer of sex for his wife. The State offered the testimony to show that Warren Sumlin had control over his wife's actions and we agree that it was relevant to that extent since Sumlin was charged as an accomplice. Sumlin argues that his counsel was surprised by the testimony since he had not been furnished with Gentry's name before trial. During the trial the prosecuting attorney informed both the court and Sumlin's counsel that he intended to call Bill Gentry and what the substance of Gentry's testimony would be. The court gave Sumlin's counsel until the next day to talk to Gentry about Gentry's testimony. There is no evidence at all that the prosecuting attorney knew of this witness's existence until he informed the court. In view of that and the fact that Sumlin's counsel was given an opportunity to talk to the witness, we find no prejudicial error.

Sumlin argues it was prejudicial to admit two pistols, gun registration certificates, and other documentary evidence. There is no merit to this objection. All of this was relevant and is admissible evidence.

It is again argued that the Arkansas death penalty statute is unconstitutional. We have ruled many times that it is constitutional.

An amicus curiae brief was filed by Lynn W. Holt of Berkley, California. Holt argues numerous errors relating to the effective assistance of counsel and other matters not raised below. He also argues for several reasons that Warren Sumlin should not have received the death penalty. Since these arguments have been disposed of or already discussed, we will not answer them.

In accordance with the requirement of Ark. Stat. Ann. § 43-2725 (Repl. 1977), we have reviewed all errors prejudicial to the rights of the defendant and find none that will require us to reverse the conviction.

Affirmed as modified.