Luther Edward SKEELS *v.* STATE of Arkansas

CR 88-217A                                   779 S.W.2d 146

Supreme Court of Arkansas
Opinion delivered October 30, 1989

*James L. Sloan*, for appellant.

*Steve Clark*, Att'y Gen., by: *C. Kent Jolliff*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Luther Edward Skeels, contends the court erred in failing to set aside his guilty plea to the charge of first degree murder. The court denied Skeels's petition which he had filed pursuant to Ark. R. Crim. P.

37. Skeels argues the lawyer who represented him in connection with his guilty plea rendered ineffective assistance. He also argues that he did not admit his guilt at the plea hearing and that at the Rule 37 hearing the trial court erred in ignoring evidence that he was framed by state officials and by giving too much credence to correspondence between Skeels and his lawyer in determining the lawyer's effectiveness. For reasons we do not know, the lawyer who represented Skeels at the pleading stage did not testify at the Rule 37 hearing. We find none of the arguments convincing, and thus we affirm.

Skeels was charged with being an accomplice in the murder of Larry Lynn Buckelew and Edmond Callen who died after being shot by Ford E. Strafaci and Travis Smith. At the plea hearing, the state presented the testimony of Clay Holcomb, who was involved in an illegal drug manufacturing scheme with Skeels, Strafaci, Smith, and others. Holcomb testified that when Skeels learned that Buckelew and Callen were stealing chemicals from the operation he gave Strafaci a shotgun and told him to "use it" or "not come back."

Strafaci also testified at the plea hearing, adding that Skeels instructed him on how to bury Buckelew and Callen and cover the bodies with lime to aid in decomposition. Smith testified that he participated in the killing because Skeels had threatened Smith's family.

In response to the court's question at the plea hearing as to why Skeels wanted to plead guilty, he responded that the state's evidence was so overwhelming as compared with the evidence he might present that it would be better for him in the long run not to fight it. He said his decision would give him "a chance to live."

### 1. Ineffective assistance of counsel

### a. Sentence comparison

Citing *Henry* v. *State*, 278 Ark. 478, 647 S.W.2d 419 (1983) and *Sumlin* v. *State*, 273 Ark. 185, 617 S.W.2d 372 (1981), Skeels argues his counsel should have told him it would be highly unlikely he would receive the death penalty because Smith and Strafaci had already pleaded guilty to the murders and received life imprisonment sentences. In each of the cited cases we reduced

the sentence of an accomplice to murder from death to life without parole after a comparison with the sentence given the principal perpetrator of the crime.

Although Skeels was charged as an accomplice, given the strong evidence at the plea hearing that Skeels was the instigator of the murders in this case, we cannot say we would have reduced a death sentence he might have received had he gone to trial for capital murder.

### b. Failure to interview Smith and Strafaci

Skeels argues his counsel was ineffective because he failed to interview Smith and Strafaci who recanted their statements against him at the Rule 37 hearing. It is contended that, had Skeels's counsel interviewed them he would have learned what they testified to later, *i.e.* that their testimony against Skeels was coerced.

For us to agree with Skeels's argument, we would have to conclude that it was improper for his counsel to rely upon sworn statements made by Smith and Strafaci as well as the corroborating testimony given by Holcomb at the plea hearing. While we may agree it would have been prudent for Skeels's counsel to have interviewed these witnesses, we cannot hold the failure to do so rendered his assistance to Skeels ineffective. Nothing presented makes us think these witnesses would have testified differently or would have recanted their sworn previous statements on the basis of having been interviewed by Skeels's counsel. No suggestion is made as to how their motivation might have been changed by such an interview. If they had told Skeels's counsel their statements were untrue, we are not told how he could have used that information to Skeels's advantage.

Counsel is presumed to be competent and effective. *Thomas* v. *State*, 277 Ark. 74, 639 S.W.2d 353 (1982). He had a duty to investigate or to make a reasonable decision that particular investigations were unnecessary. *Strickland* v. *Washington*, 466 U.S. 668 (1984); *Tackett* v. *State*, 284 Ark. 211, 680 S.W.2d 696 (1984). Under the circumstances, we cannot say his decision not to interview Smith and Strafaci was unreasonable. We are not convinced it would have made a difference in the advice counsel might have given Skeels.

### c. Advice on parole eligibility

At the Rule 37 hearing, Skeels testified his counsel told him he would be eligible for parole after serving a term of years. Skeels's sister, Vivian Williams, testified that Skeels's counsel told her Skeels could plead guilty and get a sentence of ten to fifteen years and go before the parole board after seven years imprisonment. She said she relayed that information to Skeels, although she also said she begged him not to plead guilty. As Skeels's former counsel did not testify, he refers to this testimony as unrebutted, thus suggesting that the court was required to believe it.

■ The judge at a Rule 37 hearing is not required to believe the testimony of any witness, especially that of the accused. *Owens* v. *State*, 296 Ark. 322, 756 S.W.2d 899 (1988); *Huff* v. *State*, 289 Ark. 404, 711 S.W.2d 801 (1986). In addition, the record shows conclusively that the trial court explained to Skeels the range of sentences he could receive for first degree murder as ten to forty years or life. *Douthitt* v. *State*, 283 Ark. 177, 671 S.W.2d 746 (1984).

### 2. Failure to admit guilt

At the guilty plea hearing, Skeels did not say directly that he had done the acts charged. He said, rather, that he felt he could not successfully refute the state's evidence against him. He argues our decision in *Crockett* v. *State*, 282 Ark. 582, 699 S.W.2d 896 (1984), requires that he have given an "unqualified admission" of guilt in order for his plea to have been valid.

■ Presumably the language in the Crockett case to which Skeels refers is our statement that, "[a] defendant whose conviction is based upon a plea of guilty normally will have difficulty in proving any prejudice since his plea rests upon his admission in open court that he did the act with which he is charged." That statement is a far cry from saying that a plea of guilty is insufficient because of failure to admit guilt in terms of the facts alleged.

In *McDaniel* v. *State*, 288 Ark. 629, 708 S.W.2d 613 (1986), we suggested the better course is to inquire of the accused if he is pleading guilty because he is guilty, but there the question was

whether there was a factual basis for the plea of guilty. Here, there is no doubt whatever about the factual basis.

### 3. The conspiracy against Skeels

The argument here is that the court ignored evidence that agents of the state framed Skeels. He cited the testimony of Leona Bartlett, who was Smith's mother and Skeels's ex-wife, who said she was urged by officers to get her son to involve Skeels. She testified she tried to do it but did not succeed.

■ The argument goes only to the sufficiency of the evidence showing a factual basis for the plea. That sort of direct attack on the court's judgment may not be made in a Rule 37 proceeding. *McCrosky* v. *State*, 278 Ark. 156, 644 S.W.2d 271 (1983).

### 4. Letters from counsel

The contention here is that letters from Skeels's counsel and a reply letter were prepared to gloss over counsel's deficiencies in representing Skeels. The letter from counsel referred to an "extensive investigation" of the case.

■ No authority is cited on this point, and we do not find the argument convincing. It is no more than a suggestion that the court improperly evaluated the evidence presented. It is the duty of the court to determine credibility of evidence presented at a Rule 37 hearing. *Stephens* v. *State*, 293 Ark. 231, 737 S.W.2d 147 (1987); *McDaniel* v. *State*, 291 Ark. 596, 726 S.W.2d 679 (1987).

Affirmed.

PURTLE, J., dissenting.

JOHN I. PURTLE, Justice, dissenting. The allegation by the petitioner that his co-defendants were not interviewed is uncontradicted indeed, when the co-defendants testified at the Rule 37 hearing they recanted their former statements to the authorities that the petitioner was the moving force in the murders.

Further, the petitioner's allegation that defense counsel told him he would be eligible for parole in a certain number of years

was never denied. In fact, defense counsel apparently chose to forego testifying in the matter. It seems to me that the appellant has made a prima facie showing of ineffective assistance of counsel which the state has not rebutted.