Noah Wayne RUSSELL *v.* STATE of Arkansas

CR 89-177                                                789 S.W.2d 720

Supreme Court of Arkansas
Opinion delivered May 14, 1990

*Matthews, Sanders, Liles & Sayes*, by: *Roy Gene Sanders*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant was convicted of first degree murder and sentenced to life imprisonment. His appeal was never perfected. He filed a petition in the trial court for post-conviction relief pursuant to A.R.Cr.P. Rule 37. The primary allegation in the petition is that appellant was denied effective assistance of counsel. The trial court denied the petition. We reverse and remand for a new trial because appellant was denied effective assistance of counsel.

Counsel is presumed to be competent. *Ross* v. *State*, 292 Ark. 663, 732 S.W.2d 143 (1987). Further, to prevail on an argument of ineffective assistance of counsel one must show not only that counsel's performance in specific instances fell below an objective standard of competence, but also that errors of counsel prejudiced the defense. *Strickland* v. *Washington*, 466 U.S. 668 (1984). Prejudice in this context is defined as a reasonable probability that the proceeding in question would have turned out differently had counsel not made the errors in question. *Strickland, id.; Ross* v. *State*, 292 Ark. 663, 732 S.W.2d 143 (1987).

Alan Coggins was murdered on January 16, 1985. Six months later the police arrested Kenneth Armstrong on an unrelated charge and questioned him about the Coggins murder. Armstrong denied that he committed the murder, but said he saw the appellant do it.

Armstrong's statement to the police was as follows: The day before the murder he and appellant had used his father's twenty-gauge single-shot shotgun to hunt squirrels and, after they returned from the woods, he left the shotgun in appellant's mobile home. The next day he returned to appellant's mobile home around noon. About an hour later, Coggins drove up in a light blue Toyota automobile. Appellant told Armstrong to stay inside while he went out to meet Coggins. Appellant and Coggins began to argue about money, and Armstrong heard the appellant threaten to kill Coggins. He heard Coggins reply, "Go ahead." Then appellant came back into the mobile home, got the twenty-gauge shotgun, and went back outside. Armstrong heard a shot, looked out a window, saw Coggins stagger and fall, and then saw appellant reload the shotgun and shoot Coggins in the head. He said that out of fear he helped appellant wrap Coggins' body in a blue sleeping bag and lift it into the trunk of the Toyota. Armstrong then got in appellant's car and appellant got in the Toyota, and they drove both cars to a remote area of Camp Robinson where they buried the body. They then drove both cars to a carwash near Lake Conway where they took the carpet out of the trunk, washed the trunk, and the outside of the Toyota. They then drove to Plummerville where they abandoned the light blue Toyota. Appellant subsequently drove Armstrong to a bar and left him there. Armstrong further stated that the next day he and appellant went to Coggins' house, and appellant, not Armstrong, took various items of personal property, including a VCR camera.

After hearing Armstrong's statement, the police arrested appellant. An information was subsequently filed, and attorneys Anthony J. Sherman and Jim Clouette were appointed to defend appellant. Clouette, the more experienced lawyer of the two, did not participate in the defense. Sherman met with appellant on either three or four occasions to discuss his defense.

At the post-conviction hearing, the appellant testified that, before his trial, he told Sherman that he was not guilty; that he was at work when the murder was committed; that Armstrong was probably the one who committed the murder; and that Armstrong's statement could be attacked and put in doubt by witnesses Billy Caldwell and Ronnie Burchett. He described to Sherman how Billy Caldwell and Ronnie Burchett could cast doubt upon Armstrong's statement. He said that he told Sherman

that Billy Caldwell could testify that Armstrong had a "contract" to severely beat and injure Coggins. He further testified that Ronnie Burchett would have testified that, after the murder, Armstrong came to his house in the light blue Toyota and tried to sell him the VCR which came from Coggins' house. Appellant testified that he wrote a summary of their testimony and gave that summary and their addresses to Sherman.

At trial Caldwell testified for the State, but Sherman did not cross-examine him about whether Armstrong had a "contract" on Coggins. Further, Sherman did not call Burchett as a witness.

Caldwell did not testify at the post-conviction hearing, and we consider appellant's testimony about what Caldwell would have testified to, at best, disputed. However, we cannot so easily dismiss the claim about what Burchett's testimony would have been at trial. At the post-conviction hearing Burchett testified under oath that, if he had been called, he would have testified as follows: At the time of Coggins' murder, Coggins owed Armstrong money for some drugs and they were in a "conflict" about the money. A few months before the murder Armstrong attempted to sell a VCR camera to him. He knew the camera had been stolen from the Sears store in North Little Rock. Armstrong later traded the camera to Coggins for drugs. After the murder Armstrong drove Coggins' light blue Toyota to Burchett's house and, once again, tried to sell Burchett the same camera. Further, he tried to get Burchett, who was a car thief, to "dispose" of Coggins' Toyota. Burchett's roommate purchased the camera from Armstrong, and the police confiscated it. Most importantly, Burchett testified that in an unrelated murder, he went with Armstrong to dispose of the body, and Armstrong disposed of that body at Camp Robinson.

Sherman admitted at the post-conviction hearing that appellant had told him about the probable testimony of both Caldwell and Burchett; yet, Sherman did not offer any reason whatsoever for not cross-examining Caldwell about the "contract," nor calling Burchett as a witness. Further, he apparently never talked to either of them before the trial.

If Caldwell and Burchett's testimony had been presented at trial, it could have established that Armstrong had a motive to kill Coggins; that Armstrong, and not appellant, was in possession of

Coggins' VCR camera and his car after the murder; and that Armstrong used Camp Robinson for the burial of another person he had killed. Such testimony well could have created a reasonable doubt in the minds of the jurors.

▮ Accordingly, appellant has overcome the presumption that he had effective assistance of counsel. He has shown that his counsel's performance fell below an objective standard of competence, and that he was thereby prejudiced. *Strickland* v. *Washington, supra.*

Reversed and remanded.

HAYS, GLAZE, and TURNER, JJ., dissent.

Justice GLAZE would grant a belated appeal.

STEELE HAYS, Justice, dissenting. *Strickland* v. *Washington,* 466 U.S. 668 (1984), places a heavy burden on an individual who seeks to set aside a conviction based on ineffectiveness of counsel. The convicted party must show that counsel's performance was deficient and that counsel made such a serious error that he was not performing as counsel guaranteed by the Sixth Amendment to the United States Constitution. In sum, counsel's deficient performance must prejudice the defendant's case to the extent that he did not receive a fair trial and there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Stephens* v. *State,* 293 Ark. 231, 737 S.W.2d 147 (1987); *Crockett* v. *State,* 282 Ark. 582, 669 S.W.2d 896 (1984). I submit that appellant has failed to meet that burden.

At a lengthy Rule 37 hearing the trial judge, who also presided over the appellant's trial, expressed his belief that the appellant had had "excellent representation" at his trial and that the evidence against him was "overwhelming." Yet on the basis of a single witness, Ronnie Burchett, whose testimony the trial court obviously found lacking, and who had been serving in the penitentiary from before the appellant's trial until and including the 37 hearing (part of that time with the appellant), the majority reverses the trial court's finding that defense counsel was not ineffective. Furthermore, Burchett's testimony is not corroborated by any credible proof and appellant's contention that he told defense counsel, Anthony Sherman, what Burchett would testify

to was not sustained by the findings of the trial court. On that meager basis the majority overrules the trial court, vacates a jury verdict over five years after the crime, so that the entire process, which has now involved the services of seven court appointed lawyers, can begin anew. I respectfully dissent.

GLAZE and TURNER, JJ., join in dissent.