David Wayne JOHNSON *v.* STATE of Arkansas

CR 94-960 900 S.W.2d 940

Supreme Court of Arkansas
Opinion delivered June 19, 1995

120

122

*Durrett & Coleman,* by: *Gerald A. Coleman, The Arkansas Public Defender's Commission,* by: *Didi H. Sallings,* and *Jeff Rosenzweig,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Olan W. Reeves,* Senior Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. David Johnson was convicted of capital murder and was sentenced to death by lethal injection. Both his conviction and sentence were affirmed on direct appeal. *Johnson* v. *State,* 308 Ark. 7, 823 S.W.2d 800 (1992). We stayed our mandate in order for Johnson to petition the Supreme Court of the United States for a writ of certiorari. The Supreme Court denied the writ. *Johnson* v. *Arkansas,* 112 S. Ct. 3043 (1992). Johnson filed a petition for relief under A.R.Cr.P. Rule 37 and for a writ of error coram nobis. The circuit court denied relief. Johnson appeals. We affirm the denial of postconviction relief.

## I.

Appellant's first assignment is that the trial court erred in denying relief because his attorney had a conflict of interest. Appellant's attorney, Robert Smith, represented Derrick Gilbert on an unrelated charge, and Gilbert did not testify as a witness for appellant. Appellant contends that Smith did not force Gilbert to testify because he was protecting Gilbert. The facts do not support this argument, and the trial court correctly ruled that appellant did not prove ineffective assistance of counsel as a result of a conflict of counsel's interest. *See Ford* v. *State,* 296 Ark. 8, 753 S.W.2d 258 (1988).

Prejudice will be presumed from a conflict of counsel's interest only when the defendant demonstrates that counsel actively represented conflicting interests and that actual conflict of interest adversely affected his lawyer's performance. *Strickland* v. *Washington,* 466 U.S. 668 (1984); *Cuyler* v. *Sullivan,* 446 U.S. 335 (1980). Petitioner had the burden of proving a conflict of interest and showing its adverse effects. *Dumond* v. *State,* 294 Ark. 379, 743 S.W.2d 779 (1988). A petitioner is not entitled to relief under the *Cuyler* test unless he satisfies both prongs of the test. *Salam* v. *Lockhart,* 874 F.2d 525, 527-28 (8th Cir. 1989)

(citing *Lightborne* v. *Dugger*, 829 F.2d 1012, 1023 (11th Cir. 1987), *cert. denied*, 109 S. Ct. 329 (1988)). The prejudice must be real and have a demonstrable detrimental effect and not merely have some abstract or theoretical effect. *Simmons* v. *Lockhart*, 915 F.2d 372, 378 (8th Cir. 1990).

At the trial on the merits, appellant proffered the testimony of Derrick Gilbert, which was that he would testify that Bobby Jewell Ford told him that he sold some property to appellant that was stolen from the crime scene on the night of the murder. The trial judge advised appellant's attorney, Smith, that he would sustain a hearsay objection to such testimony. A deputy prosecutor stated that, since Gilbert had told her earlier that he knew nothing about the crime, he would be committing perjury if he gave such testimony, and, consequently, he might need an attorney. Appellant's attorney, Smith, stated that he had a "problem" because he represented Gilbert in a different case. The trial judge advised Gilbert to "get out of here before you get yourself in trouble."

At the postconviction hearing, Gilbert testified that Ford had told him that he thought he had killed someone and that he had obtained drugs from appellant in exchange for some items that were stolen from the crime scene. Gilbert further testified that Smith had initially represented him on an unrelated charge, but had failed to appear at his trial, and another attorney ultimately represented him. Gilbert admitted that he told the deputy prosecutor he did not know anything about the stolen items, but said that the reason he said that was because the deputy prosecutor indicated that he was a suspect in the murder case and he was afraid he might be charged with capital murder. Finally, Gilbert testified that he told a falsehood when he told the prosecutors he knew nothing about appellant's case.

Smith's representation of Gilbert would include a duty to protect Gilbert from perjuring himself or from implicating himself in the murder. Arguably, this is what Smith meant when he stated at trial that he had a problem because he also represented Gilbert. However, even assuming this shows an actual conflict, it does not prove that the conflict had a real and demonstrable effect on Smith's performance. *See Ford*, 296 Ark. at 16, 753 S.W.2d at 262. Appellant did not show the conflict had an adverse effect because: (1) Smith did try to get Gilbert to testify for appel-

lant, and (2) the trial judge ruled that the testimony would be inadmissible hearsay. A.R.E. Rule 801.

In the postconviction proceeding, appellant contended that the testimony was admissible under A.R.E. Rules 804(a)(2) and 804(b)(3), and under *Chambers* v. *Mississippi,* 410 U.S. 284 (1973), and, if Smith had not had the conflict of interest, he would have argued the testimony was admissible. The argument is without merit because, in the posttrial proceeding, appellant did not establish that the testimony could have been admitted. It does not fit within a hearsay exception. Rule 804(a)(2) provides a hearsay exception when the declarant persists in refusing to testify about the subject matter of his statement despite an order of the court to do so. The facts do not support this exception because the trial court never ordered Gilbert to testify, and Gilbert never refused to do so. Rather, Gilbert was available, and the trial court ruled the testimony would be hearsay. Rule 804(b)(3) provides that statements against interest are not hearsay when the declarant is unavailable. A.R.E. Rule 804(b)(3). However, the Rule also provides that before a hearsay statement which would exculpate the accused, but is against the penal interest of the witness will be admitted, the trial court must determine whether the circumstances surrounding the statement are solidly trustworthy. *Id.* The Rule expressly provides that such a statement is not admissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.* The record reflects that Derrick Gilbert is currently serving a seventy-five year sentence for aggravated robbery, kidnapping, and a drug offense. Bobby Ford, the person who allegedly made the statement against penal interest, was a co-defendant with Gilbert and was also convicted on the aggravated robbery and kidnapping charges. He testified that Gilbert was his "fall partner" and that he robbed hotels and "places" to "get money to buy weed and stuff." He testified that he got to know Gilbert when he was standing on a street corner and Gilbert stole a Wells Fargo vehicle containing $40,000.00. Finally, at the postconviction hearing Ford denied having made the statement against penal interest. The trial court heard the witnesses, observed them, and expressly found:

> [T]hat Bobby Ford is not a credible witness as he obviously has problems with his mental faculties, includ-

ing his ability to relate events. This court also finds that Derrick Gilbert is not a credible witness either, based upon the testimony of the deputy prosecutors, Melody LaRue and Mark Fraiser, concerning their conversations with him in the jail, as well as his testimony before this court.

Appellant contends that at the trial Charles Whitfield could have corroborated the alleged statement against penal interest, but that Smith did not use him as a witness. To the contrary, Smith testified that he never heard the name Charles Whitfield until the postconviction hearing. Moreover, appellant did not call Whitfield as a witness at the postconviction hearing. Finally, Bobby Ford testified that he did not see or speak to Charles Whitfield the night appellant committed the murder, and he denied making any statement against penal interest to Whitfield. In sum, appellant failed to show that the testimony was admissible as an exception to hearsay, and the unreliable hearsay evidence was not admissible under *Chambers.* Thus, appellant failed to show that Smith acted in favor of Gilbert to the detriment of appellant because of a conflict of interest.

## II.

Appellant next argues that the trial court erred in refusing to rule that Smith was ineffective at trial. The law on this subject is well settled. Counsel is presumed to be competent. *Russell* v. *State,* 302 Ark. 274, 789 S.W.2d 720 (1990) . A reviewing court indulges a strong presumption that counsel's conduct falls within a wide range of "reasonable professional assistance." *Missildine* v. *State,* 314 Ark. 500, 508, 863 S.W.2d 813, 818 (1993). To prevail on an argument of ineffective assistance, an appellant must show not only that counsel's performance fell below an objective standard of competence, but he must also show that, but for counsel's errors, there is a reasonable probability that the jury would have decided differently. *Strickland,* 466 U. S. at 687. A general claim of ineffectiveness with no showing of actual prejudice will not warrant relief. *Malone* v. *State,* 294 Ark. 367, 741 S.W.2d 945 (1988). Judicial review of counsel's performance is highly deferential, and "a fair assessment of counsel's performance under *Strickland* requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged con-

duct, and to evaluate the conduct from counsel's perspective at the time." *Missildine,* 314 Ark. at 508, 863 S.W.2d at 814. A court considering a claim of ineffective assistance must view it through the perspective of the totality of the evidence put before the jury. *Id.* In reviewing a trial court's denial of postconviction relief, we will affirm unless the ruling is clearly against the preponderance of the evidence. *Atchison* v. *State,* 298 Ark. 344, 767 S.W.2d 312 (1989).

### a.

■ Under this general assignment of error, appellant makes a number of sub-points. In the first of these he argues that Smith was ineffective because he did not interview Bobby Jewell Ford, the man who allegedly admitted to Derrick Gilbert that he had killed someone and that he had sold some property to appellant that was stolen at the time of the murder. To the contrary, Smith testified that he visited with Ford and that he checked with the State Crime Laboratory to determine if any of the fingerprints at the scene matched those of Ford. He testified that Ford refused to admit to him that he had sold stolen property to appellant. The record reflects that Smith did call Ford as a witness and that Ford invoked the Fifth Amendment. In the postconviction proceeding the trial court found that Smith had done all that he could do to get Ford to testify. The trial court's finding is not clearly against the preponderance of the evidence. *See Atchison,* 298 Ark. at 346, 767 S.W.2d at 313.

### b.

■■ Appellant argues that Smith was ineffective because he did not view the crime scene in preparation for trial. Smith testified at the postconviction hearing that he visited the crime scene before the trial. Appellant argues that Dudley Swann, the owner of Little Rock Crate and Basket company where the murder was committed, did not recall showing Smith the premises. Thus, appellant concludes that Smith never examined the crime scene. The actual testimony is not so conflicting as appellant would have it appear. Smith testified that he talked to Dudley Swann by phone and that he subsequently went to the scene and examined it without ever having met Swann. Even if there were a conflict in testimony, the resolution of credibility issues is within the province of the trial court. *Atchison,* 298 Ark. at 346,

767 S.W.2d at 313; *Huff* v. *State*, 289 Ark. 404, 711 S.W.2d 801 (1986). In addition, Smith gave a detailed description of the crime scene. Again, appellant has failed to show that the trial court's ruling is clearly against the preponderance of the evidence. Equally as important, he does not show how it would have made a difference even if Smith had not visited the scene, and he must do so in order to prevail. *Strickland*, 466 U.S. at 687.

### c.

■ Appellant argues that Smith did not examine the evidence prior to trial. Audrianna Grisham, who shared a law office with Smith, testified that he did not seem to be familiar with the case and that he did not appear to have seen the evidence until just before the trial. However, Smith testified at the postconviction hearing that he thoroughly examined the evidence, that he worked on the case for about a year before he met Ms. Grisham, that he only met Ms. Grisham about two weeks before the trial, and that she did not know the extent of his preparation. Again, credibility issues and the weighing of testimony are for the trial court. *Atchison*, 298 Ark. at 346, 767 S.W.2d at 313.

### d.

Appellant next contends that Smith failed to adequately investigate the penalty phase of the trial. In support of the argument, he states that Smith knew of violence and alcoholism in appellant's family background, yet he contended there was nothing out of the ordinary in appellant's background. Appellant also supports the argument by stating that Smith did not use a family history he prepared, did not talk with his sister, did not call a psychologist, Dr. James Moneypenny, until just before the trial, and did not know what mitigating circumstances existed until just before trial.

■ The trial court ruled that appellant did not show any prejudice because appellant did not show what mitigating circumstances Dr. Moneypenny or other family members would have brought out in trial. An examination of appellant's brief to the trial court confirms this. He states that it was "easy" for the prosecution to "establish the paucity of Dr. Moneypenny's contacts" with him; thus "one cannot say that the weighing of the [aggravating and mitigating] circumstances would not have been

different" if Moneypenny had more time with him. He argues that only one family member was called to testify and if others had been called, "the strength of the family unit *might* have caused the jury not to vote for death." However, appellant did not show what the family members might have said or done to help him, and a part of his argument in the penalty phase of the trial was that he should not receive the death penalty because he was fully capable of peacefully living the rest of his life in prison. Allegations of ineffective assistance without substantiation do not justify postconviction relief. *Gilbert* v. *State*, 282 Ark. 504, 669 S.W.2d 454 (1984). When a petitioner fails to show what the omitted testimony was and how it would have changed the outcome, we will not grant postconviction relief for ineffective assistance. *See Missildine,* 314 Ark. at 509-10, 863 S.W.2d at 819. To prove ineffectiveness due to failure to secure testimony, our cases require a showing of what would have been presented in the testimony as well as how the outcome would have been changed by it. *See Russell,* 302 Ark. at 277-78, 789 S.W.2d at 721.

e.

Appellant next argues that Smith was ineffective at the pretrial proceedings. In this sub-point, appellant contends that Smith did not object to a misstatement of evidence in the omnibus hearing. The specific argument is that at the hearing on November 1, 1990, the State claimed to have matched appellant's fingerprints with fingerprints found at the scene, but, in fact, the fingerprint analysis done at the Crime Laboratory was not completed and mailed to the prosecutor's office until November 26, 1990. Also, appellant argues that Smith apparently never did realize that he was not charged with capital felony murder, as he made a double counting argument both at pretrial and on appeal.

We summarily dismiss the argument about double counting, because, again, appellant has failed to show how he was prejudiced by Smith making the argument in his behalf. *Strickland*, 466 U.S. at 687. With regard to the fingerprints, the record shows that a deputy prosecutor stated at the omnibus hearing that the prints located near the victim were matched against the prints of appellant. Smith did not object. James Beck, a latent fingerprint examiner for the State Crime Laboratory, testified at the postconviction hearing that he first processed some prints in

September of 1989, received more prints which he processed November 8, 1990, and completed the report on November 26, 1990. He testified that he thought a board he examined was returned to the Little Rock Police Department after September of 1989 and brought to him again in 1990. He stated that a fingerprint impression and a palm print taken from a window, as well as fingerprints from a coin box, matched appellant's. Fingerprints taken from the two-by-four wooden board were not matchable.

 The trial court found that it would not have made any difference even if Smith had objected at the omnibus hearing because Ann McClain of the Little Rock Police Department was included on the witness list in the felony information, and she would have been able to testify that she matched the fingerprints. Again, appellant has shown no prejudice in this omission by Smith. He must show that the outcome of the trial would have been different if the omission had not occurred. *Strickland*, 466 U.S. at 687. To do this, he would have to show, at the very least, that the fingerprints would not have been admissible, and he has not done this.

### f.

Appellant contends that Smith was ineffective in both voir dire and selection of the jurors. He argues that Smith seated four jurors who previously sat as jurors on a capital murder trial in which a death verdict was rendered and that he did not strike other jurors. Specifically, appellant contends Smith should have struck one juror who worked closely with security personnel, another a former military policeman who said that he would give police officers' testimony more credibility because they take field notes, two jurors who could not think of any mitigating circumstances, and one who had been a witness in a murder case. Appellant also contends Smith did not object when the State asked certain jurors to consider all the evidence when determining punishment, did not explore the jurors' attitudes toward capital punishment, and that Smith suggested that crime is on the rise and that the death sentence is a more effective deterrent to crime than is the sentence of life without parole. Audrianna Grisham's testimony on this issue is abstracted in the material part as follows:

On several occasions, he [Smith] and I had almost heated conversations about potential jurors, him thinking that they were qualified and me having doubts about it. It was Rob's sole criteria; he wanted an all Catholic jury to sit on David Johnson's trial. Their religion was his paramount concern, and he told me that. I remember one particular juror that during the middle of voir dire said that she absolutely without a doubt believed in capital punishment, but she was either Catholic or a religion that Rob considered tantamount to Catholicism, and he wanted her on the jury. I told him I thought it was a really bad idea.

Smith testified that he examined the responses the jurors made to questions submitted prior to trial. He testified that, as the trial took place three years ago, he could not recall the names of the jurors, and he did not recall whether he took jurors who had previously voted for a death penalty. He testified that if he had done so, he would have had a reason at the time.

Smith testified that he talked to attorneys who had extensive criminal experience. He testified that Millard Farmer was one of the foremost defense attorneys in capital cases, and Farmer told him appellant was likely to be sentenced to death. Thus, Smith was apparently looking for a strategy that might keep his client from the death sentence. He apparently chose to base it upon religious tenets of the jurors. Appellant's argument is that Smith used bad strategy in selecting the panel. We have often written that we will not label counsel ineffective merely because of possible bad tactics or strategy. *Dumond* v. *State*, 294 Ark. 379, 743 S.W. 2d 779 (1988). We hold that errors, omissions, mistakes, improvident strategy, or bad tactics are not alone sufficient to render counsel ineffective. *Haynie* v. *State*, 257 Ark. 542, 546, 518 S.W.2d 492, 495 (1975).

g.

Appellant makes two-arguments under this sub-issue. They are: (1) Smith failed to sufficiently raise doubts that tennis shoes and clothes admitted into evidence belonged to appellant; and (2) Smith failed to present alibi witnesses and other exculpatory evidence.

## 1.

The forensic scientist from the State Crime Laboratory testified that the small amount of human blood on the shoes introduced into evidence could not be matched to either appellant or the victim. Connie Manuel, appellant's girlfriend with whom he was living, stated that on the night of the murder appellant wore the clothes and shoes that were admitted into evidence, and that appellant washed some clothes the next day, but she could not say whether the clothes he washed were the same clothes he wore earlier. Luella Shavis, Connie Manuel's mother, who also lived with appellant, testified that she authorized the police to take some clothes from a bedroom of their home, but she could not tell if the ones presented at trial were the ones taken except for the shirt. There were no witnesses who described appellant's clothing at the time of the murder, except for possibly Terrie Dickerson, who saw him before and after the murder, and she testified that she thought he was wearing jeans, a blue or gray shirt, and tennis shoes. Dickerson was not asked to identify the clothes at trial. Since the clothes and shoes did not directly connect appellant with the murder, and since appellant did not tell his attorney at trial that the shoes were not his, the trial court ruled that the appellant failed to show either that Smith's conduct on this subpoint fell below the objective standard for an attorney or that, in view of all of the other evidence of guilt, it made any difference in the outcome of the trial. We cannot hold that the trial court's ruling was clearly against the preponderance of the evidence.

## 2.

Appellant argues that Smith should have asked Terrie Dickerson if appellant was at her house at the time of the murder. Although the question at trial was not asked in that exact way, Terrie Dickerson did testify to that effect. She stated that, at approximately 7:00 p.m. on the evening of the murder, appellant walked up to her house and told her that her car, which he had borrowed, was stuck in a ditch by Little Rock Crate and Basket. She further testified that it would take about two hours to walk to her house from Little Rock Crate and Basket. If true, this would have made it impossible for Johnson to have committed the murder, as Leon Brown was alive at 5:00 p.m. *See Johnson*,

308 Ark. at 11, 823 S.W.2d at 802. Smith argued this time factor in his closing argument. Further, Smith attempted to get Dickerson's mother, Ella Mae Richardson, to testify that she talked to appellant between 5:00 and 5:30 on the date of the murder, when he called from Little Rock Crate and Basket to tell her Terrie's car was stuck in a ditch, but the trial court sustained a hearsay objection.

 Appellant's complaint about Dickerson's testimony is that it should have been "emphasized" more, but, again, it is an argument over strategy. *Haynie*, 257 Ark. at 546, 518 S.W.2d at 495. Since Smith did attempt to procure Richardson's testimony, appellant's argument is really only a disguised evidentiary argument that the hearsay objection should have been overruled. We do not entertain such arguments in Rule 37 petitions. *Stephens v. State*, 293 Ark. 231, 737 S.W.2d 147 (1987).

 Appellant also argues that Smith made a mistake in not cross-examining criminalist Gary Lawrence. On direct, Lawrence testified that hairs found on a board, arguably the murder weapon, could not be definitively identified as the victim's hairs. Smith did not cross-examine him, but that strategy allowed him to argue in closing that there was no evidence to link appellant with the murder weapon.

### h.

Appellant argues that in the penalty phase of the trial Smith should have offered more evidence about his background, both through Dr. Moneypenny and through family members. At trial, Dr. Moneypenny attempted to testify about appellant's background, but a hearsay objection was sustained. At the postconviction hearing, Dr. Moneypenny testified that appellant indicated his mother had a drinking problem and that there was a lot of physical violence between his mother and father and between his mother and stepfather. Dr. Moneypenny stated that he had testified about mitigating circumstances in other trials. However, there was no proof that family members would have so testified. In fact, appellant's sister, Patrice Jenkins, testified at trial that the men in their home were "wonderful" father figures. Thus, appellant has not brought forth the facts necessary to show any prejudice.

134

■ The argument concerning Dr. Moneypenny's testimony is a disguised evidentiary argument that the testimony should have been admitted under Ark. Code Ann. § 5-4-602(4) (Repl. 1993), which states that the rules of evidence, such as hearsay, do not apply to mitigating evidence in capital cases. Such arguments are not entertained in Rule 37 petitions. *Haynie*, 257 Ark. at 546, 518 S.W.2d at 495.

i.

Appellant argues that Smith was ineffective after the trial. the facts surrounding this argument are as follows. Audrianna Grisham, Smith's disgruntled former office-mate, testified at the posttrial hearing that she received a phone call from either a prospective juror or spectator, stating that two prospective jurors were discussing the crime before voir dire and said "all niggers are guilty and ought to be hung." One of the jurors, a woman, supposedly served on the jury. Ms. Grisham admitted on cross- examination that she did not remember the name of the caller and had not tried to reconstruct it for appellant's attorneys for the post-trial petition. She did not know the name of the juror, but said that she could possibly determine it through process of elimination. She stated that Smith told her he spoke to the trial judge and was told not to pursue it. Smith testified that a witness for the State, who would not give his name, called him after the trial and told him the same story. He testified that he reported the incident to the trial judge, and the trial judge told him there was nothing that could be done unless the individual would be willing to identify himself and testify. The individual refused to identify himself or give an affidavit.

■ The trial court found that Grisham's testimony was not credible and that Smith had done all he could do. Again, such questions of credibility are within the province of the trial court. *Atchison*, 298 Ark. at 346, 767 S.W.2d at 313. Appellant does not show what else Smith should have done to get the juror to testify. He has failed to show that Smith's performance fell beneath any objective standard, or that he was prejudiced. *Strickland*, 466 U.S. at 687.

III.

■ Appellant argues that he should be afforded relief because the deputy prosecutors violated Rule 4.2 of the Arkansas

Rules of Professional Conduct when they questioned Derrick Gilbert about this murder while Gilbert was represented by counsel. The argument is without merit. Gilbert was represented by Smith in an unrelated matter, and the Rule does not prohibit communication with a party on matters outside the representation. *See* Comment to Rule 4.2.

Appellant contends that *United States* v. *Lopez,* 989 F.2d 1032 (9th Cir. 1993), a case interpreting a similar rule of the California Rules of Professional Conduct, is authority for holding that the prosecutors violated the Rule. In that case, the Ninth Circuit Court of Appeals held that the comparable California Rule was violated, but the facts of that case are inapposite to the case at bar. There, the defendant attempted to personally meet with the prosecutor about his case because he had a difference of opinion with his lawyer over plea bargains. *Id.* at 1034. The court held that the prosecutor violated the rule by meeting with the appellant. *Id.* at 1038. Here, the prosecutors were not questioning Gilbert about a crime he was accused of committing.

## IV.

Appellant argues that the trial court erred in denying post-conviction relief because he is actually innocent of capital murder. We summarily dismiss this point of appeal. We recited the proof in our original opinion, *Johnson* v. *State,* 308 Ark. 7, 823 S.W.2d 800 (1992), and held that the proof was overwhelming that appellant savagely murdered Leon Brown for pecuniary gain.

In this argument appellant merely reiterates his argument that Bobby Ford may have killed Leon Brown, which is what he unsuccessfully argued at trial. Appellant is therefore trying to rechallenge the sufficiency of the evidence in this post-conviction proceeding. We have said that there can be no relief on an ineffectiveness claim when there is no demonstration that additional evidence would have persuaded the jury differently. *Wainwright* v. *State,* 307 Ark. 569, 823 S.W.2d 449 (1992). Here, this proposition is even more pronounced because there is not even a suggestion of new evidence.

## V.

In his final point of appeal, appellant makes three sub-points involving the penalty phase of the trial.

### a.

The first sub-point involves this court's opinion on the direct appeal. In this argument appellant contends that the trial court erred in its Rule 37 ruling in refusing to hold that this court improperly applied the harmless error analysis to an evidentiary ruling involving the testimony of Dr. Moneypenny. *See Johnson*, 308 Ark. at 27, 823 S.W.2d at 810-11. The transparency of the argument is immediately obvious. Our allowance of such a procedure would have the trial court, in a Rule 37 proceeding, review the holding of the supreme court. The answer to the argument is, if our opinion were to have contained an error of law, it had to be remedied in this court through a petition for rehearing. The now alleged error was never cited in a petition for rehearing, *see* Ark. Sup. Ct. R. 2-3, and this court was never afforded an opportunity to correct the supposed error. The mandate was handed down in 1992, during the October 1991 term, and once the mandate has been handed down, the disposition of the case becomes final. Ark. Sup. Ct. R. 5-3. In addition, the supreme court cannot modify or enlarge a judgment after the close of the term. *Hershey* v. *Luce*, 56 Ark. 320, 20 S.W. 6 (1892). Thus, we dismiss the argument.

### b.

The second sub-point involves this appeal from the trial court's denial of postconviction relief. In his Rule 37 petition filed in circuit court, appellant argued that trial counsel was ineffective at trial because he "did not object to improper restriction on mitigation evidence." The trial court directly addressed this argument and ruled that this court in its opinion addressed the improper restriction on mitigating evidence and held that there was no prejudice because the evidence came in through another witness. The trial court then ruled that appellant was attempting to reargue the evidentiary issue through the guise of ineffective assistance of counsel and could not do so when the claim was addressed on direct appeal. *See Stephens* v. *State* 293 Ark. 231, 737 S.W.2d 147 (1987). The trial court's ruling was correct.

### c.

The third sub-point involves counsel's ineffective-

ness for failing to argue on rehearing that this court's opinion on direct appeal contained an alleged error of law. Appellant did not make this allegation in his Rule 37 petition filed in circuit court. The matter was not argued below, and the trial court did not rule on it. This is an appeal from the trial court's denial of the Rule 37 petition, and our general rule is that specific allegations of ineffectiveness of counsel must be pleaded, and specific issues of ineffectiveness of counsel cannot be raised for the first time on appeal. *Tisdale* v. *State*, 311 Ark. 220, 227, 843 S.W.2d 803, 807 (1992). However, in death penalty cases we will consider errors argued for the first time on appeal *where prejudice is conclusively shown by the record and this court would unquestionably require the trial court to grant relief under Rule 37. Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 284, *cert. denied*, 459 U.S. 882 (1982). In *Sumlin* v. *State*, 273 Ark. 185, 617 S.W.2d 372 (1981), we said an error may be argued for the first time on appeal in a death case only when it is "of such magnitude that it would require us to take note of an error which involved a fundamental deprivation of the right to a fair trial." *Id.* at 192, 617 S.W.2d at 376.

The record does not show error of such magnitude. In fact, the record does not show any error in our opinion. Appellant contends that this court erroneously employed the harmless error standard of review in deciding the penalty phase of the trial, and cites *Williams* v. *State*, 274 Ark. 9, 621 S.W.2d 686 (1981), *cert. denied*, 459 U.S. 1042 (1982) as authority. The argument is without merit. *Williams* does not hold that we can never use the harmless error standard of review in the penalty phase. Rather, the opinion states that, since the jury found one of the three aggravating circumstances by using an erroneous instruction given by the trial court, "we are not in a position to speculate about what the jury might have done if it had found only two aggravating circumstances instead of three." *Id.* at 12, 621 S.W.2d at 687. Then, after we decided *Williams* the General Assembly amended the applicable statute, Ark. Code Ann. § 5-4-603(d), to expressly provide for this court to use the harmless error standard of review. The statute is fairly described in Survey, *Criminal Procedure*, 10 U.A.L.R. Law Journal 567, 569 (1987-88), as follows:

> The Act states that where the Arkansas Supreme Court finds that the jury erred in finding the existence of aggra-

vating circumstances or lack of mitigating circumstances, the court shall conduct a harmless error review. The review as set out by the legislature requires the supreme court to determine whether the remaining aggravating circumstance(s), excluding the circumstance found in error, exists beyond a reasonable doubt and justifies a death sentence beyond a reasonable doubt. If so, the court can conclude that the jury would have imposed the death sentence despite the error, and can affirm the defendant's death sentence by a vote of a simple majority, rather than remand for the lower court to determine the sentencing issue.

*Id.* at 569.

In *Ward* v. *State*, 308 Ark. 415, 827 S.W.2d 110 (1992), and *Sanders* v. *State*, 308 Ark. 178, 824 S.W.2d 353 (1992), both decided after the statute was amended, we stated that we could reweigh the aggravating circumstances and affirm the death sentences on the basis of a review employing the harmless error standard, but, in both cases, we declined to hold that the error was in fact harmless.

When mitigating circumstances are found, the wording of the statute does not expressly authorize this court to utilize a harmless error review in the weighing of aggravating circumstances against mitigating circumstances, but that was not the issue before us on direct appeal of this case. Nowhere in the direct appeal did we reweigh aggravating circumstances against mitigating circumstances. Rather, on our own motion we discovered an erroneous evidentiary ruling involving testimony about mitigating circumstances, *see* Ark. Sup. Ct. R. 4-3(f), and we wrote:

> Even though the ruling was erroneous, no prejudice was suffered because the expert witness was able to express his opinion that the appellant could successfully live in a prison society, *and the jury so held,* and the facts concerning the appellant's background were fully developed for the jury by another witness, appellant's sister, Patrice Marcella Jackson Jenkins.

*Johnson,* 308 Ark. at 27, 823 S.W.2d at 811 (emphasis added).

There was no proffer at trial of additional testimony

by Dr. Moneypenny that might have caused the jury to find an additional mitigating circumstance. Patrice Jenkins testified about appellant's background, and there was no objection to her testimony. Consequently, there was no proffer of additional testimony by her. Thus, the jury heard all of the evidence about mitigating circumstances that was offered at trial. This court correctly used the harmless error standard of review in deciding the evidentiary issue. We did not reweigh the aggravating circumstance against the mitigating circumstance. Therefore, appellant was not deprived of any rights, much less the fundamental right to a fair trial. In sum, appellant's argument is without merit because he did not plead the matter in his Rule 37 petition in circuit court, and it is barred. Even if we considered the matter for the first time on appeal because it is a death case, the argument is without merit, and appellant was not deprived of a fundamental right to a fair trial.

Affirmed.

BROWN and ROAF, JJ., concurring in part and dissenting in part.

ROBERT L. BROWN, Justice, concurring in part, dissenting in part. I agree to affirm the Order Denying Post-Conviction Relief on every point but one and would remand for resentencing.

During the penalty phase at the original trial, Johnson was prohibited by court ruling from presenting complete background testimony through Dr. Moneypenney in mitigation of a death sentence. We affirmed that ruling in *Johnson* v. *State*, 308 Ark. 7, 823 S.W.2d 800 (1992) (*Johnson* I), and used a harmless error analysis in making our decision. In particular, we noted that Dr. Moneypenney's testimony about Johnson's background would have been cumulative to the testimony by Johnson's sister. It appears that we erred in holding as we did. *See Skipper* v. *South Carolina*, 476 U.S. 1 (1986); *see also Greene* v. *State*, 317 Ark. 350, 878 S.W.2d 384 (1994); *Sheridan* v. *State*, 313 Ark. 23, 852 S.W.2d 772 (1993); Ark. Code Ann. § 5-4-603 (1987).

The key assumption in the majority's discussion of this issue is an erroneous conclusion that Johnson did not raise his counsel's failure to petition for rehearing in his Rule 37 petition. But Johnson did raise that failure, after explaining the error of applying the harmless error analysis to the exclusion of a mitigating

circumstance:

> As discussed previously, to the extent that this mat-
> ter is deemed to have been procedurally defaulted at trial
> or on appeal, Smith [trial counsel] was ineffective in not
> properly presenting and preserving it.

Despite this assertion in the Rule 37 petition, the trial court ruled
as follows:

> *Mitigation evidence.* Petitioner alleged that his attor-
> ney was ineffective for not objecting to the improper restric-
> tion on mitigation evidence. The Arkansas Supreme Court
> when addressing the issue of improper restriction on mit-
> igating evidence, stated that there was no prejudice because
> the evidence came in through another witness. Petitioner
> appears to be arguing an evidentiary question through the
> guise of ineffective assistance of counsel, and cannot do so
> especially when the claim was raised on direct appeal.
> *Robinson* v. *State, supra. See O'Rourke* v. *State*, 298 Ark.
> 144, 764 S.W.2d 916 (1989); *Neff* v. *State*, 287 Ark. 88, 696
> S.W.2d 736 (1985).

Contrary to the trial court's statement, the mitigation issue
was not raised on direct appeal by Johnson. Rather, this court
raised the issue as part of our Supreme Court Rule 4-3(h) review
and then applied the harmless error analysis. *See Johnson* I, 308
Ark. at 26, 823 S.W.2d 810. Hence, the only opportunity for trial
counsel to correct this error was on rehearing. The majority also
writes that the mitigation argument is one that should have been
made on rehearing in *Johnson* I. But, again, that failure of trial
counsel to ask for rehearing in *Johnson* I is exactly the point.
Johnson's counsel prejudiced Johnson's case by not doing so.

The majority then concludes that even if Johnson did assert
the issue of failure to ask for rehearing in his Rule 37 petition,
Johnson did not suffer any prejudice by the exclusion of Dr. Mon-
eypenney's testimony. Specifically, the majority concludes that
application of the harmless error test was proper. But this runs
counter to our cases and authority from the United States Supreme
Court. In *Sheridan* v. *State*, we underscored the importance of mit-
igation testimony:

> The United States Supreme Court has held that it is a

mandatory safeguard of the Eighth Amendment for the sentencing body to be allowed to consider any mitigating factor that is relevant to the particular offender's case. *California v. Brown*, 479 U.S. 538 (1987); *Roberts v. Louisiana*, 431 U.S. 633 (1977); *Gregg v. Georgia*, 428 U.S. 153 (1976). The defense must be allowed during the sentencing phase to introduce any relevant mitigating evidence the defense proffers concerning the character or history of the offender or the circumstances of the offense. *California v. Brown, supra.* Not only must relevant mitigating evidence be admitted, it must be actually considered, which in appropriate cases means specifically instructing the jury to do so. *Penry v. Lynaugh, supra; Eddings v. Oklahoma*, 455 U.S. 104 (1982). In other words, any death sentence that results from a deliberate exclusion of any relevant mitigating evidence is presumptively invalid. *Hitchcock v. Dugger*, 481 U.S. 393 (1987).

313 Ark. at 38, 852 S.W.2d at 779.

The United States Supreme Court has addressed the precise point of whether the exclusion of proof of mitigation is prejudicial error. *See Skipper v. South Carolina*, 476 U.S. 1 (1985). In *Skipper*, the defendant was sentenced to death. The trial court, during the sentencing phase of the trial, excluded as irrelevant testimony of two jailers and a visitor who would have testified that the defendant had made a good adjustment in jail. Both the defendant and his wife had testified that he had also conducted himself well in jail. The Supreme Court reversed the death sentence and remanded for resentencing on the basis that the testimony of a mitigating circumstance by these *disinterested witnesses* was relevant. In doing so, the Court stated:

> We think, however, that characterizing the excluded evidence as cumulative and its exclusion as harmless is implausible on the facts before us. The evidence petitioner was allowed to present on the issue of his conduct in jail was the sort of evidence that a jury naturally would tend to discount as self-serving. The testimony of more disinterested witnesses — and, in particular, of jailers who would have had no particular reason to be favorably predisposed toward one of their charges — would quite nat-

urally be given much greater weight by the jury. Nor can we confidently conclude that credible evidence that petitioner was a good prisoner would have had no effect upon the jury's deliberations. The prosecutor himself, in closing argument, made much of the dangers petitioner would pose if sentenced to prison, and went so far as to assert that petitioner could be expected to rape other inmates. Under these circumstances, it appears reasonably likely that the exclusion of evidence bearing upon petitioner's behavior in jail (and hence, upon his likely future behavior in prison) may have affected the jury's decision to impose the death sentence. Thus, under any standard, the exclusion of the evidence was sufficiently prejudicial to constitute reversible error.

The exclusion by the state trial court of relevant mitigating evidence impeded the sentencing jury's ability to carry out its task of considering all relevant facets of the character and record of the individual offender.

*Skipper*, 476 U.S. at 8.

The facts of the instant case are analogous. But the majority opinion holds that excluding the mitigation testimony of Dr. Moneypenney concerning Johnson's adverse background conditions was cumulative to that of his sister and, therefore, harmless. However, a sister's testimony does not substitute for that of a disinterested witness. The jury was deprived of Dr. Moneypenney's testimony. It was error to exclude it, and trial counsel should have petitioned for rehearing when this court affirmed the error.

I believe that the exclusion of Dr. Moneypenney's testimony on mitigating circumstances might well have affected the assessment of the death penalty. Accordingly, I would remand for resentencing. *See Ward* v. *State*, 308 Ark. 415, 827 S.W.2d 110 (1992).

ROAF, J., joins in this dissent.